463 A.2d 467

COMMONWEALTH of Pennsylvania

v.

**John GRAVES, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 14, 1981.

Filed July 22, 1983.

Petition for Allowance of Appeal Denied Nov. 15, 1983.

486

William P. James, Philadelphia, for appellant.

Ann C. Lebowitz, Assistant District Attorney, Philadelphia, for Com., appellee.

Before CAVANAUGH, DiSALLE *, and WATKINS, JJ.

* DiSALLE, J., did not participate in the consideration or decision of this case.

WATKINS, Judge:

This case comes to us on appeal from the Court of Common Pleas of Philadelphia County, and involves the defendant-appellant's appeal of his conviction of multiple counts of forgery for his part in an extensive fraudulent check cashing scheme. The defendant was convicted by a jury of 65 counts of forgery. He was sentenced to four (4) to ten (10) years imprisonment by the trial court.

The testimony produced at trial established that Samuel Bruno, Andre Carson, and the defendant engineered an extensive fraudulent check cashing scheme in Philadelphia between 1973 and December of 1976. The actors would obtain unauthorized possession of a group of checks of a corporate checking account holder and forge the checks so that they resembled payroll checks. The payee line and payee endorsement of each of these checks were forged in the name of an individual account holder whose pre-encoded deposit slips had also come into the actors' unauthorized possession. Each of a group of the selected deposit slips would then be forged to reflect a split deposit so that some of the proceeds would be deposited into an account and some of the proceeds of the check would be given to the person presenting it in cash. The checks and deposit slips would then be presented at various branches of the deposit slip account bank by a female accomplice posing as an employee of the corporate entity from whom the forged checks were obtained. The female accomplices would then be driven to a series of bank branches by either Bruno, Carson, or the defendant. Either Carson or the defendant would enter the bank with the female accomplices to make certain that nothing went wrong. Upon completion of the transaction they would leave the bank, destroy the customer receipt, turn over the cash obtained from the bank to the car's driver, and the female accomplice would then be given 30% of the cash as her share. The trial of this case took almost one month as extensive evidence was needed to establish the above mentioned facts.

■ Defendant's first allegation of error is that the prosecutor committed prosecutorial misconduct entitling him to a new trial. The Commonwealth had entered into various agreements with trial counsel of several Commonwealth witnesses guaranteeing reduced sentences in return for their testimony. Trial counsel were instructed not to inform their clients of the deals, however. Thus, the Commonwealth witnesses were able to testify truthfully that they were aware of no deals made with prosecutors. In this way the Commonwealth attempted to conceal the fact that deals had been made with its witnesses and so avoid the defense impeachment of those witnesses. The court below characterized this conduct as a "fraud on the court". Defendant argues that he should be granted a new trial because of it. However, in the instant case knowledge of the deals became known prior to the trial's conclusion by the witnesses' trial counsel who testified that the agreements for leniency had been made. We agree with the lower court that this enabled the jury to assess the credibility of the Commonwealth witnesses and sufficiently mitigated any prejudice which might have been caused by the Commonwealth's improper conduct. See *U.S. v. Harris,* 498 F.2d 1164 (3rd Cir.) cert. denied, 419 U.S. 1069, 95 S.Ct. 655, 42 L.Ed.2d 665 (1974).

■ Next, defendant claims that there was insufficient evidence produced at his trial to sustain his conviction. We do not agree. The evidence of record clearly establishes defendant's participation in the fraudulent check-cashing scheme. Defendant argues that he was improperly convicted on the theory of accomplice liability. This contention is without merit. In order to convict a defendant of conspiracy a factfinder must conclude that he reached an agreement with a co-conspirator to commit the crime. In order to establish defendant's guilt on an accomplice theory, an agreement is not required, as only aid is required. *18 Pa.C.S.A. 306; Commonwealth v. Holmes,* 482 Pa. 97, 393 A.2d 397 (1978). The least degree of concert or collusion in the commission of the offense is sufficient to sustain a

finding of responsibility as an accomplice. *Commonwealth v. Coccioletti*, 493 Pa. 103, 425 A.2d 387 (1981). Viewed in the light most favorable to the verdict winner (in this case—the Commonwealth) the evidence establishes the defendant's participation and aid in the commission of the various offenses involved in the fraudulent check-cashing scheme.

■ Next, the defendant claims that his right to a fair trial was violated by the prosecutor when the prosecutor, in his summation to the jury, referred to an incriminating statement given by the co-defendant Carson. During his summation, however, the prosecutor scrupulously redacted Carson's statement to avoid any reference whatsoever to the defendant or to Bruno. The prosecutor stated that, "this is what Carson says about himself", in referring to the statement. Moreover, the trial court instructed the jury quite thoroughly on the applicability of Carson's statement thereby curing any problems with the prosecutor's remarks. Under these circumstances the prosecutor's argument did not deprive the defendant of a fair trial. See *Commonwealth v. Brown*, 490 Pa. 560, 417 A.2d 181 (1980); *Parker v. Randolph*, 442 U.S. 62, 99 S.Ct. 2132, 60 L.Ed.2d 713 (1979).

■ Next, the defendant argues that the lower court erred in granting the Commonwealth two Rule 1100 extensions and that his trial counsel was ineffective for failing to oppose the second extension of time granted to the Commonwealth by the trial court. These contentions are meritless. The instant action constituted a complex, multi-defendant case with complicated proofs. The criminal complaints against the defendants were filed on December 10, 1976. The original "run date" was June 6, 1977. The Commonwealth filed a timely petition to extend the "run date" on May 27, 1977 and hearings were held thereon on June 6, 1977 and June 16, 1977. At said hearings the Commonwealth introduced into evidence a letter from Judge McKel which established that preliminary hearings on this case had been held on January 27, 1977, February 7,

8, 28, 1977, March 1, 21, 1977, May 2, 1977, May 5, 6, 1977. Testimony was taken during most of said hearing date. Several preliminary hearing dates were continued because of the unavailability of counsel for co-defendant Bruno or Bruno himself. Moreover, several defense motions were outstanding at the time of the original "run date". In light of the many preliminary hearings, the outstanding defense motions, and the complexity of the case we find that the Commonwealth exercised due diligence in bringing the matter to trial and that the court below properly granted the Rule 1100 extensions. Furthermore, no judge was available on June 6, 1977 for the time it would take to hear this case. No error occurred in granting the Rule 1100 extensions.

On September 2, 1977, the court below, after hearing, granted the Commonwealth's second application for an extension of the time in which to bring the defendant to trial. This motion was unopposed by defendant's counsel. Defendant now claims that his counsel was ineffective for failing to oppose the extension. This contention is meritless. On September 12, 1977, the defendant himself had several pre-trial motions outstanding and co-defendant Bruno was unavailable for trial. The court below wanted all co-defendants tried together to conserve judicial resources since the Commonwealth planned to call between 80 to 100 witnesses at the trial. Moreover, defendant's motion to quash was not decided until October 19, 1977 and co-defendant Bruno had appealed a ruling to our court which was outstanding on September 12, 1977. Trial actually commenced on November 28, 1977. Furthermore defendant was free on bail at the time and thus not being incarcerated indefinitely. Thus, the court below acted properly when it granted the Commonwealth's second request for a Rule 1100 extension. Counsel cannot be deemed ineffective for failing to file a frivolous motion to dismiss or for failing to oppose the Commonwealth's petition to extend the time when such would be frivolous. *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1977). Because the court acted correctly when it extended the time in which to bring

the defendant to trial any motion opposing it by defendant's counsel would have been frivolous.

Next, the defendant claims that he was denied his Sixth Amendment right to trial by jury and of his right to make a summation to the jury because during the proceedings on December 19, 1977 the court called a lunch recess when it noted that two jurors were "getting sleepy" and because the jury showed some signs of fatigue during closing argument on January 18, 1978. First of all defendant's counsel did not object to the recess called during cross-examination on December 19, 1977. Thus, any objection to it is waived. *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974). Secondly, the calling of such a recess is within the sound discretion of the trial court and it committed no error here when it attempted to be solicitous of the needs of the jurors. During defendant counsel's closing arguments several jurors appeared drowsy but none actually fell asleep. The court questioned the jurors at that time and found them to be fatigued but aware of the proceedings. Moreover, defendant's counsel was arguing theories to the jury that they had heard from co-defendant's counsels several times previously. It was not at all unusual for them to be bored with said arguments by the time defendant's counsel argued. Juror boredom with counsel's arguments is not a grounds for a new trial. No error is present here.

Next, the defendant argues that the court committed reversible error when it excused a juror, Madeline Arnell, from further service in this case. This contention is meritless. The discharge of a juror is a matter within the sound discretion of the trial judge and the lower court will only be reversed for an abuse of that discretion. *Commonwealth v. Black*, 474 Pa. 47, 376 A.2d 627 (1977). Moreover, Ms. Arnell was excused because she had a long standing commitment to begin school on January 9, 1978 and she had not expected the trial to last as long as it did. The court did not abuse its discretion when it excused her for that reason. *Commonwealth v. Jerry*, 485 Pa. 95, 401 A.2d 310 (1979).

Finally, defendant contends that he was denied a fair trial because the Commonwealth nolle prossed certain bills of information before the case went to the jury. Defendant claims that the Commonwealth overcharged him to prejudice him in the jury's eyes. This contention is devoid of merit. All of the evidence presented against defendant was admissible to prove his participation of the offenses of which he was convicted. The Commonwealth had a good faith belief that it would be able to prove all of the charges alleged against the defendant but made a tactical decision to withdraw certain bills in order to simplify the jury's task. Defendant suffered no prejudice as a result of the nolle prossing of the charges. Under these circumstances he has failed to show any reason why a new trial is warranted.

Judgement of sentence affirmed.