**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Ronald L. MURPHY, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 24, 2001.
Filed March 25, 2002.

James B. Rader, York, for appellant.

Christian J. Dabb, Assistant District Attorney, York, for Com.

BEFORE DEL SOLE, P.J., JOHNSON, J., and CERCONE, P.J.E.

CERCONE, P.J.E.

¶ 1 Appellant, Ronald Murphy, appeals from the judgment of sentence imposed by the Trial Court after his conviction for delivery of a controlled substance (heroin) and conspiracy to deliver a controlled substance (heroin).[1] After review, we affirm.

¶ 2 The underlying facts of this case, which gave rise to Appellant's conviction, have been gleaned from the trial record in this matter. The record reveals that on August 30, 2000 Pennsylvania State Trooper Timothy Longenecker went to an area in the City of York for the purposes of making a controlled purchase of heroin. N.T. Trial, 3/9/2001, at 65. Trooper Longenecker had made previous drug purchases in this area in an undercover capacity. The trooper, who was dressed casually, parked his car on the street outside of an apartment located at the intersection of Queen and Liberty Streets, alighted, and approached Appellant who was sitting on steps outside of the apartment. The trooper asked Appellant if he knew where he could score some "dope" which, according to the trooper, was street parlance for heroin. *Id.* at 66. Appellant replied by asking the trooper if he was a "cop." The trooper replied no; whereupon, Appellant called out to another man, Jose Rivas, who was across the street at the time, and asked Rivas to come over. *Id.* at 66, 89.

¶ 3 Rivas came over to where Appellant and the trooper were standing. *Id.* at 66. Rivas asked the Appellant if the trooper was a cop, and Appellant said "no, he's cool." *Id.* Rivas then asked the trooper how much money he was willing to spend, and how many bags he wanted. The trooper indicated that he wanted two bags. *Id.* at 67. Rivas told the trooper to "wait here," and Rivas then walked away north on Queen Street. *Id.* at 67. Appellant and the trooper remained behind and had casual conversation. *Id.* at 68, 91.

¶ 4 Several minutes later Rivas returned and told the trooper to follow him. *Id.* at 67. The trooper and Rivas then walked

---

1. 35 P.S. § 780–113(a)(30) and 18 Pa.C.S.A. § 903 respectively.

east on Liberty Street about one-half block. *Id.* At that point Rivas dropped two (2) bags of heroin on the street and told the trooper to drop the money on the ground. *Id.* at 93. The trooper complied and dropped two previously marked twenty-dollar bills on to the ground. *Id.* at 67. The trooper then picked up the drugs and walked back to his car. *Id.* In the process of so doing he turned around and observed Rivas picking up the money. *Id.* at 68, 94.

¶ 5 As the trooper walked back to the car, Appellant asked the trooper if he could share a half bag of heroin with him. *Id.* at 68. The trooper said no, but Appellant was persistent in his request. *Id.* Eventually the trooper gave Appellant $5.00 out of his pocket. *Id.* After giving Appellant the money, the trooper got in his car and drove away. *Id.* Appellant and Rivas were subsequently arrested by other members of the York County Drug Task Force.

¶ 6 In the bills of information lodged against Appellant, he was charged as a principal with the offense of delivery of heroin as well as being charged with conspiring with Rivas to deliver heroin. Appellant proceeded to a jury trial. At the conclusion of the Commonwealth's case, Appellant moved for a judgment of acquittal on the basis that he was acting merely as an a agent for the buyer and not the seller, what he termed the "buyer's agent defense." The Trial Court denied the motion, and Appellant testified in his own defense. Prior to the commencement of jury deliberations Appellant requested a jury instruction on the "buyer's agent defense," which was denied by the Trial Court. The jury was, however, instructed on the theory of accomplice liability. The jury ultimately returned a verdict of guilty. After the completion of a presentence investigation, the Trial Court on May 2, 2001 imposed a sentence of twenty-three (23) to forty-six (46) months incarceration for the delivery of heroin charge and an identical twenty-three (23) to forty-six (46) month sentence for the conspiracy charge. The Trial Court ran both sentences consecutive to one another. The Trial Court also sentenced Appellant to an additional consecutive term of incarceration of eight (8) to sixteen (16) months in prison on an unrelated retail theft charge.[2] Appellant's aggregate sentence was therefore fifty-four (54) to one hundred eight (108) months imprisonment. From that judgment of sentence, Appellant filed a timely notice of appeal.

¶ 7 On appeal to our Court Appellant presents two (2) issues for our consideration:

1. WHETHER THE EVIDENCE PRESENTED AT TRIAL WAS INSUFFICIENT TO CONVICT THE APPELLANT BEYOND A REASONABLE DOUBT FOR THE OFFENSES OF DELIVERY OF HEROIN AND CRIMINAL CONSPIRACY TO DELIVER HEROIN WHERE THE APPELLANT WAS ACTING AS AN AGENT FOR THE BUYER?

2. WHETHER THE TRIAL COURT ERRED IN REFUSING TO CHARGE THE JURY WITH THE APPELLANT'S REQUESTED JURY INSTRUCTION ON THE "BUYER'S AGENT" DEFENSE"?

Appellant's Brief at 5. We will consider these claims in the order in which Appellant has presented them.

¶ 8 In his first issue, Appellant challenges the sufficiency of the evidence to support his convictions for delivery of heroin and conspiracy. Our standard of review in addressing these challenges is well-settled:

In evaluating a challenge to the sufficiency of the evidence, we must deter-

2. Appellant does not challenge the propriety of this portion of his sentence on appeal.

mine whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, together with all reasonable inferences therefrom, the trier of fact could have found that each and every element of the crimes charged was established beyond a reasonable doubt. *Commonwealth v. Montini,* 712 A.2d 761, 767 (Pa.Super.1998); *Commonwealth v. Swann,* 431 Pa.Super. 125, 635 A.2d 1103, 1105 (1994), *appeal denied,* 538 Pa. 669, 649 A.2d 671 (1994). In making this determination, we must evaluate the entire trial record and consider all the evidence actually received. *Commonwealth v. DiStefano,* 782 A.2d 574, 582 (Pa.Super.2001); *Commonwealth v. Rodriquez,* 449 Pa.Super. 319, 673 A.2d 962, 965 (1996). "[T]he facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence, but the question of any doubt is for the trier of fact unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances." *Commonwealth v. Seibert,* 424 Pa.Super. 242, 622 A.2d 361, 363 (1993), *appeal denied,* 537 Pa. 631, 642 A.2d 485 (1994) (citing *Commonwealth v. Sullivan,* 472 Pa. 129, 371 A.2d 468, 478 (1977) and *Commonwealth v. Libonati,* 346 Pa. 504, 31 A.2d 95, 97 (1943)). "This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt." *Commonwealth v. Swerdlow,* 431 Pa.Super. 453, 636 A.2d 1173, 1176 (1994) (citing *Commonwealth v. Hardcastle,* 519 Pa. 236, 546 A.2d 1101, 1105 (1988)).

¶ 9 We first consider whether the evidence was sufficient to sustain Appellant's conviction for delivery of a controlled substance under Section 780–113(a)(30) of "The Controlled Substance, Drug, Device and Cosmetic Act" (hereinafter the "Act"). This portion of the Act provides:

(30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

35 P.S. § 780–113(a)(30). Delivery is further defined by the Act as follows:

"DELIVER" or "DELIVERY" means the **actual, constructive, or attempted** transfer from one person to another of a controlled substance, other drug, device or cosmetic whether or not there is an agency relationship.

35 P.S. § 780–102 (emphasis supplied). As our Court further noted in *Commonwealth v. Cameron,* 247 Pa.Super. 435, 372 A.2d 904, 907 (1977): "Transfer is not defined in the Act; however, taking the commonly accepted meaning of the word, as we must ... it means '[t]o convey or remove from one ... person to another; pass or hand over from one to another.' " (citing *Black's Law Dictionary,* at 1669 (Rev. 4th ed.1968)) (internal citations omitted). *See also Commonwealth v. Metzger,* 247 Pa.Super. 226, 372 A.2d 20, 22 (1977) (for a delivery to take place under the Act does not require that the transfer of the controlled substance be to a law enforcement officer, but simply that it be a transfer between two (2) people).

■ ¶ 10 Applying these legal precepts to the facts of the case at bar, to sustain Appellant's conviction for delivery of the heroin, as a principal in the delivery, requires that the Commonwealth have demonstrated beyond a reasonable doubt that Appellant delivered the cocaine to the trooper or another person. In other words, the Commonwealth must have

proven beyond a reasonable doubt that Appellant transferred the cocaine by actually removing it from the possession of Jose Rivas and passing it or handing it over to the trooper or another person, or, alternatively, constructively causing it to be removed from the possession of Jose Rivas and to be passed or handed over to the trooper or another person.

¶ 11 The evidence adduced at trial does not establish that Appellant participated in any way in the actual physical transfer of the cocaine from Mr. Rivas to the trooper or to anyone else. To the contrary, the evidence adduced at trial, as set forth above, established only that Appellant merely introduced the trooper to Mr. Rivas and vouched for the trooper to Rivas. The physical transfer of the drugs was effectuated by Mr. Rivas, after he had retrieved the drugs, by placing them on the sidewalk for the trooper to pick up. Appellant did not touch, handle, or otherwise have physical contact with the drugs at any point in time. Consequently, the evidence of record does not show that Appellant actually transferred the drugs to the trooper or any other person.

¶ 12 The Commonwealth concedes this absence of evidence of an actual physical delivery by Appellant, but instead asserts that Appellant effectuated a constructive delivery. Commonwealth's Brief at 11. We therefore must consider whether Appellant's actions constituted a "constructive transfer" of the heroin within the meaning of Section 780–102 of the Act. The Act itself is silent as to the meaning of the term constructive transfer, and our research has disclosed no Pennsylvania appellate authority that defines the term as it is used in the Act. However, it is axiomatic that "[w]hen interpreting a statute words must be given their plain meaning,

unless doing so would create an ambiguity, and we must interpret statutes in accordance with the legislative intent." *Semasek v. Semasek*, 509 Pa. 282, 502 A.2d 109, 111 (1985). *See also* 1 Pa.C.S.A. § 1903(a) ("Words and phrases shall be construed according to rules of grammar and according to their common and approved usage [.]"); *Hull v. Rose Schmidt, Hasley and Disalle*, 700 A.2d 996, 999 (Pa.Super.1997) ("[S]tatutes are presumed to employ words in their popular and everyday sense and the popular meaning of such words must prevail."). Hence, we will construe the term constructive transfer in accord with its plain and ordinary meaning.

¶ 13 In ascertaining the plain and ordinary meaning of constructive transfer, we may look to its dictionary definition. *See Fogle v. Malvern Courts*, 554 Pa. 633, 722 A.2d 680, 682 (1999) (approving dictionaries as source material for determining the common and approved usage of a term) (citing *Love v. City of Philadelphia*, 518 Pa. 370, 543 A.2d 531, 532 (1988)). Black's Law Dictionary defines a constructive transfer as: "A delivery of an item—esp. a controlled substance—by someone other than the owner but at the owner's direction." Black's Law Dictionary, at 1503, (Seventh Edition 1999). Black's further defines an owner as "one who has the right to possess, use and convey something." *Id.* at 1130. Stated another way, an owner "has dominion of a thing ... which he has a right to enjoy and do with as he [or she] pleases." Black's Law Dictionary, at 997, (Fifth Edition 1979); *Accord Commonwealth v. One Suzuki Samurai*, 139 Pa.Cmwlth. 68, 589 A.2d 770, 772 (1991) (adopting Black's definition to show elements inherent in ownership). Thus, the concept of constructive transfer as used in the Act requires that a person[3]

---

3. We use the term person as it is defined in the Act, namely an "individual, corporation, government or governmental subdivision or

agency, business trust, estate, trust, partner-

making a constructive transfer of a controlled substance, the transferor, must have ownership of the controlled substance; i.e., the controlled substance must belong to the person, or the person must have dominion and control over it. The constructive transfer of the controlled substance occurs, then, whenever it is given to another by a third person who is acting at the transferor's direction or command.

¶ 14 This interpretation is consistent with the judicial construction of constructive transfer as it is used by parallel controlled substance statutes of other states which, like the current version of Pennsylvania's Act, were derived from the Uniform Controlled Substances Act. *See e.g.* *State v. Campbell,* 59 Wash.App. 61, 795 P.2d 750, 752 (1990) (court construed meaning of term constructive transfer, as used in the controlled substance act of the state of Washington,[4] to be "the transfer of a controlled substance either belonging to the defendant or under his direct or indirect control, by some other person or manner at the instance or direction of the defendant."); *Davila v. State,* 664 S.W.2d 722, 724 (Tex.Crim.App.1984) (a "constructive transfer [under the former version of the Texas controlled substance act[5]] [is] the transfer of a controlled substance, either belonging to the defendant or under his direct or indirect control by some other person or manner agency at the instance or direction of the defendant."); *Roberts v. State,* 866 S.W.2d 773, 778 (Tex.Ct. App1993) ("Constructive transfer [under the present version of the Texas controlled substance act[6]] is the transfer of a controlled substance, either belonging to the accused or under his control by some other person or agency at the instance or direction of the accused."); *York v. State,* 751 So.2d 1194 (Miss.S.Ct.1999) (adopting *Roberts* definition of constructive transfer); *State v. Ellis,* 161 W.Va. 40, 239 S.E.2d 670, 673 (1977) ("We interpret a 'constructive transfer' [under the West Virginia controlled substance act[7]] to be the transfer of a controlled substance either belonging to an individual or under his control by some other person or agency at the instance or direction of the individual accused of such constructive transfer."); *Laird v. State,* 483 N.E.2d 68, 70 (Ind. S.Ct.1985) (constructive transfer occurred under Indiana controlled substance act[8] when drugs were transferred by another

---

ship or association, or any other legal entity." 35 P.S. § 780–102.

4. Revised Code of Washington (ARCW) § 69.50.101(f) which provides:

(f) "Deliver" or "delivery," means the actual or constructive transfer from one person to another of a substance, whether or not there is an agency relationship.

5. Art. 4476–15, Sec. 1.02(8), V.A.C.S. (Vernon's Annotated Consolidated Statutes), now repealed, which provided:

"Deliver or Delivery" means the actual or constructive transfer from one person to another of a controlled substance, either actually or constructively, whether or not there is an agency relationship.

6. Texas Health & Safety Code Ann. § 481.002(8) which sets forth:

"Delivery" means to transfer a controlled substance, either actually or constructively, to another regardless of whether there is an agency relationship.

7. W.Va.Code § 60A–1–101(f), repealed and now found at § 60A–1–101(g), which states: "Deliver" or "delivery" means the actual, constructive, or attempted transfer from one person to another of ... a controlled substance, whether or not there is an agency relationship ..."

8. Indiana Code § 35–48–1–1, repealed, and now found at Indiana Code § 35–48–1–11 which provides as follows:

"Delivery' means an actual or constructive transfer from one person to another of a controlled substance, whether or not there is an agency relationship."

for appellant at his request); *United States v. Waller*, 503 F.2d 1014, 1015 (7th Circuit 1974) (appellant's control over conduct of drug transaction with informant and over the drugs themselves established a constructive transfer under the Federal Drug Abuse Prevention and Control Act[9]).

■ ¶ 15 In the case *sub judice*, the Commonwealth's evidence did not establish that Appellant either had a proprietary interest in the heroin or had dominion and control over it. Neither does the evidence establish that the Appellant in any way directed or controlled the actions of Rivas. Once Appellant introduced the trooper to Rivas, it was Rivas who exclusively controlled the conduct of the transaction with the trooper and the actual manner of the physical transfer of the heroin. Rivas was the one who inquired as to the quantity of drugs which the trooper wanted, physically retrieved the heroin from its stored location and exchanged it for money. The trooper and other officers who were participating in the buy operation at no time observed Rivas and Appellant exchanging any drugs or money, and the marked money used in the transaction was later found on Rivas's person, not on Appellant's. N.T. Trial, *supra*, at 53–54, 56–57, 91–92. Thus, under these specific facts, the evidence did not demonstrate that Appellant constructively transferred the heroin to the trooper or any other person.[10] Hence, the evidence is insufficient to establish Appellant's criminal responsibility as a principal in the delivery of the heroin.

¶ 16 However, since the jury in this matter was instructed on the basis of accom-

**9.** 21 U.S.C. § 802(8) which specifies: "The terms "deliver" or "delivery" mean the actual, constructive, or attempted transfer of a controlled substance or a listed chemical, whether or not there exists an agency relationship."

**10.** In *Davila, supra*, the Texas Court of Criminal Appeals, (their highest appellate court for criminal matters) arrived at the same conclusion under facts which also showed that the defendant performed a mere functionary role in introducing an undercover agent to a narcotics dealer. In *Davila* the appellant asked an undercover agent, who had entered a house in which she was sitting on the couch, what he wanted, and the agent replied "four." The appellant went outside and brought her husband back to the agent. Her husband asked the agent what he wanted and the agent again replied four. Husband gave the agent four balloons with heroin in exchange for $120.00, while appellant was present. Appellant was convicted of constructive delivery of the heroin. Her conviction was overturned by the intermediate court of appeals. In affirming the reversal of her conviction the Court of Criminal Appeals held that the evidence did not show that appellant effectuated a constructive transfer. The Court said:
The evidence presented in the instant case fails to show that appellant had direct or indirect control of the contraband prior to its delivery, and does not show that the contraband was delivered by [her husband] at the instance or direction of appellant. At most the evidence shows that appellant merely relayed Chism's offer to buy to her husband Cosme. Cosme negotiated both the quantity and the price before making the delivery. Appellant made no response when Chism offered to buy "four." The fact that she might have understood what he meant by his cryptic offer is no proof that the contraband was under her direct or indirect control prior to its delivery by Cosme to Chism. Furthermore, appellant's act in merely relaying an offer from buyer to seller is not sufficient to prove that the seller acted at the "instance or direction" of the appellant. There is no proof that appellant had any control over Cosme's actions. *Id.* at 724–725. *See also Dawson v. State*, 812 S.W.2d 635 (Tex.Ct. Appeals 1991) (no constructive transfer of narcotics occurred by appellant where appellant merely brought undercover agent to house where seller was, and the seller engaged in the actual exchange of drugs for money, since the evidence showed that appellant had no control over the drugs nor did it show that seller was acting at appellant's direction).

plice liability, we must therefore also consider whether the evidence was sufficient to sustain Appellant's conviction as an accomplice of Rivas in the delivery of the heroin.[11] Section 306 of the Crimes Code states:

(a) **GENERAL RULE**—A person is guilty of an offense if it is committed by his own conduct or by the conduct of another person for which he is legally accountable, or both.

(b) **CONDUCT OF ANOTHER**—A person is legally accountable for the conduct of another when:

\* \* \* \* \* \*

(3) he is an accomplice of such other person in the commission of the offense.

(c) **ACCOMPLICE DEFINED**—A person is an accomplice of another person in the commission of an offense if:

(1) with intent of promoting or facilitating the commission of the offense.

(i) solicits such other person to commit it; or

(ii) aids or agrees or attempts to aid such other person in planning or committing it.

18 Pa.C.S.A. § 306. "Accomplice culpability is established through a two-step analysis: first, that the accomplice acted in such a way that he solicited or aided another's criminal conduct and, second, that any act was committed with the intent of promoting or facilitating the crime." *Commonwealth v. Wagaman,* 426 Pa.Super. 396, 627 A.2d 735, 740 (1993), *appeal denied,* 536 Pa. 623, 637 A.2d 283 (1993); *Accord Commonwealth v. Hatchin,* 709 A.2d 405, 410 (Pa.Super.1998), *appeal denied,* 556 Pa. 672, 727 A.2d 128 (1998). "The least degree of concert or collusion in the com-

mission of the offense is sufficient to sustain a finding of responsibility as an accomplice." *Commonwealth v. Gladden,* 445 Pa.Super. 434, 665 A.2d 1201, 1208 (1995), *appeal denied,* 544 Pa. 624, 675 A.2d 1243 (1996) (quoting *Commonwealth v. Graves,* 316 Pa.Super. 484, 463 A.2d 467, 470 (1983)).

¶ 17 The evidence viewed in a light most favorable to the Commonwealth was sufficient to sustain Appellant's conviction as an accomplice of Rivas in the delivery of the heroin since it showed, as the Trial Court found, that Appellant aided in the delivery of heroin by Rivas. After the trooper told Appellant that he wanted heroin and after Appellant had asked the trooper whether he was a police officer, Appellant called out to Rivas and asked him to come over to the trooper. Appellant then personally gave Rivas assurances that the trooper was not a police officer. Appellant remained present during the conversation between Rivas and the trooper and was fully aware that a purchase of narcotics had been arranged. Appellant stayed with the trooper as Rivas retrieved the drugs and returned with them for the purpose of delivering them to the trooper. From this sequence of events the jury could properly infer that Appellant acted with the specific intent of promoting or facilitating the delivery of the heroin by aiding Rivas in the delivery of the heroin; therefore Appellant's conviction for delivery under the theory of accomplice liability was proper.

¶ 18 We reject Appellant's contention that he cannot be found criminally liable as an accomplice of Rivas because he was acting during this transaction as an agent of the buyer. As support for his

11. Our Court has ruled that the jury may be instructed on accomplice liability even though a defendant is charged in the information only as a principal in the commission of the offense, when the trial evidence shows con-

certed action by appellant with another. *Commonwealth v. Munchinski,* 401 Pa.Super. 300, 585 A.2d 471, 482 (1990), *appeal denied,* 529 Pa. 618, 600 A.2d 535 (1991).

contention Appellant relies on the case of *Commonwealth v. Flowers*, 479 Pa. 153, 387 A.2d 1268 (1978). In that case the appellant, Flowers, was standing in a public square with a friend when he was approached by an undercover police agent who asked Flowers if he knew where he could buy marijuana. Flowers said no but later, after conversing with a third individual who had arrived on the scene, a Mr. Shiner, Flowers called the officer over, introduced Shiner and said that Shiner had marijuana. All three individuals went together in the agent's car to the residence of a fourth person, a Mr. Dustin. Dustin passed the marijuana to Shiner who in turn passed it to the undercover officer. The agent passed the money back to Dustin through Shiner. Flowers was present at the transaction, but did not handle either drugs or money, did not participate in the negotiations, nor did he receive any compensation for his role. Flowers was charged as an "accessory before the fact"[12] for his participation in the sale of the marijuana. Somewhat incongruously, although Flowers was charged as an accessory in the *sale* of the marijuana, the specific underlying crime to which Flowers was alleged in the indictment to have been an accessory to was a violation of 35 P.S. § 780–113(a)(30), which as discussed, *supra*, prohibits the manufacture delivery or possession with intent to deliver a controlled substance. Nevertheless, the trial judge convicted him as an accessory before the fact to the sale of the marijuana. Our Court affirmed his conviction, reasoning

that "but for" the introduction of the parties the sale would not have taken place. *Id.*, 387 A.2d at 1270. Our Court did not examine the intent of the parties.

¶ 19 On appeal to the Supreme Court, Appellant maintained that the evidence was insufficient to sustain his conviction as either a principal or an accessory before the fact to the "felony of *selling* a controlled substance." *Id.*, 387 A.2d at 1270 (emphasis supplied). The Court in deciding this specific issue agreed. The Court reasoned that the circumstantial evidence could not establish that appellant was an active "partner in the intent to make this sale." *Id.* at 1271. The Court cited as factors in support of its conclusion the fact that there was no evidence which showed that appellant played a part in originating the transaction, that he met Shine by design or plan or that Shine was any more than a passing acquaintance. The Court also found persuasive the fact that appellant "did not handle either cash or marijuana, did not enter into negotiations or delivery and was present only passively during the ride to Shiner's residence and thereafter." *Id.*

¶ 20 In its analysis the Court discussed the fact that appellant was acting as an agent for the buyer. The Court referred to its earlier holding in the case of *Commonwealth v. Simione*, 447 Pa. 473, 291 A.2d 764 (1972) in which it held that one who is an agent of the buyer cannot be convicted of the offense of selling controlled substances.[13] The Court reasoned

---

**12.** An accessory before the fact was defined as one "who plans, cooperates, assists, aids, counsels or abets in the perpetration of a felony." *Id.*, 387 A.2d at 1270.

**13.** *Simione* dealt with the specific issue of whether an individual who sets up a sale of narcotics on behalf of a particular buyer could be prosecuted as a "seller" of narcotics. In *Simione* an undercover agent had persuaded the appellant to arrange a sale of hashish

through a third party. The appellant arranged the sale and passed the drugs to the agent and the money to the dealer. Appellant was charged under Section 4(q) of the Pennsylvania Drug, Device and Cosmetic Act (Act of September 26, 1961, P.L. 1664) (repealed) which prohibited the "possession, control, dealing in, dispensing, selling, delivery, distribution, prescription, trafficking in, or giving of, any dangerous or narcotic drug." 35 P.S. § 780–4(q). The prosecution proceeded to

that since appellant, Flowers, was an agent of the buyer, he could not be held criminally responsible for the sale of the marijuana. The Court concluded that since appellant could not be held guilty for the sale, he could not be held guilty as an accessory before the fact to the sale, since under the Penal Code of 1939 (repealed and replaced by the Crimes Code of 1973) an accessory before the fact was treated as a principal to the underlying crime.

¶ 21 The Court observed that the underlying crime for which Flowers was specifically charged was delivery of a controlled substance. The Court said:

> [A]ppellant herein *could have been convicted only as an accessory before the fact to the delivery of marijuana,* just as the appellant in *Simione* could have been convicted only of selling the marijuana. Here, as in *Simione, no collaboration or association between appellant and the persons who delivered the marijuana was shown.* The only person for whom appellant could be construed to have been acting was the buyer, and "one who acts solely as the agent of the buyer cannot be convicted of a 'sale' of an unlawful drug." *Commonwealth v. Simione, supra,* 447 Pa. at 479, 291 A.2d at 767. Appellant herein was not charged with aiding and abetting the buying of marijuana but, in the prosecution's own words, as an accessory to the sale. The Court in *United States v. Moses,* 220 F.2d 166 (3d Cir.1955) reached the same result on facts almost

identical to these. Appellant therein was related to the sale of narcotics only through application of Section 2 of Title 18, United States Code, which provides that one who "aids, abets, counsels, commands, induces or procures" the commission of an offense is a principal. At the buyers' request she had introduced the buyers to the seller and vouched for them. In reversing her conviction, the Court held, as we do here, that "one who has acted without interest in the selling cannot be convicted as a seller even though his conduct may in fact have facilitated the illegal sale." *Id.* at 169.

*Flowers,* 387 A.2d. at 1272 (emphasis supplied).

¶ 22 Thus, contrary to Appellant's assertion, the Supreme Court expressly recognized in *Flowers* that a person, even though acting as an agent of a buyer of a controlled substance, may still be convicted as an accessory before the fact for the delivery of a controlled substance, so long as the evidentiary circumstances warrant. Since the Supreme Court had also previously recognized that "an accessory before the fact is by definition an accomplice,[14]" *Commonwealth v. Sisak,* 436 Pa. 262, 259 A.2d 428, 431 (1969), its holding in *Flowers* correspondingly can also be read as support for the proposition that a person who is acting as the agent of the buyer may still be convicted as an accomplice in the delivery of the controlled substance if established by the evidence. Clearly the

trial and obtained a conviction on the sole and specific theory that appellant was guilty of the offense of selling controlled substances. The Supreme Court disagreed and held that "where ... there is no evidence that the defendant received any of the proceeds of the sale or was employed by the seller to promote sales, we do not believe it can be fairly said that defendant is guilty of a 'sale,' [in accordance with its commonly understood meaning] and we hold that as a matter of law defendant cannot be included in the category

of 'sellers' of narcotic that the legislature singled out for especially severe punishment." *Simione,* 291 A.2d at 768.

**14.** Prior to the enactment of 18 Pa.C.S.A. § 306, an accomplice was defined under Pennsylvania caselaw as one who "knowingly and voluntarily cooperates with or aids another in the commission of a crime." *Commonwealth v. Jones,* 213 Pa.Super. 504, 247 A.2d 624, 626 (1968).

Supreme Court in *Flowers* did not deem the evidence sufficient in that case to convict the appellant as an accessory before the fact to the delivery of narcotics, since the evidence did not establish any active collaboration or association between appellant and the drug dealer who delivered the controlled substance. The appellant in *Flowers* was quite literally "along for the ride" when the transaction took place between third parties.

¶ 23 However, unlike the conduct of the appellant in *Flowers*, Appellant's conduct in the present case does demonstrate his direct collaboration with the dealer of the heroin, Rivas, with the intent to effectuate a delivery of the heroin. Once Appellant was aware of what the trooper wanted, and when he decided to aid the trooper, he then actively sought out Rivas and then facilitated the transaction between the trooper and Rivas by expressly vouching for the trooper's identity to Rivas. Thus this evidence establishes that Appellant was not merely a passive participant simply "along for the ride" as the appellant was in *Flowers*. Moreover, unlike the appellant in *Flowers* who did not seek or receive compensation for his role in the transaction, Appellant in the instant matter actively sought recompense from the trooper in the form of a portion of the drugs, and he later received monetary compensation from the trooper. This demonstrated his clear intent to benefit from the delivery of the drugs from Rivas to the trooper and showed that he was not merely performing a "friendly gesture of accommodation" as the appellant did in *Flowers*.[15]

¶ 24 We turn now to the question of whether the evidence was sufficient to sustain Appellant's conviction for conspiracy to deliver a controlled substance. The offense of conspiracy is defined by statute, in relevant part, as follows:

(a) Definition of conspiracy.—A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime. . . .

\* \* \* \* \* \*

(e) Overt Act.—No person may be convicted of conspiracy to commit a crime unless an overt act in pursuance of such conspiracy is alleged and proved to have been done by him or by a person with whom he conspired.

18 Pa.C.S.A. § 903.

¶ 25 Thus, "[t]o sustain a conviction for criminal conspiracy, the Commonwealth must establish that the defendant (1) entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and (3) an overt act

---

15. Appellant has additionally cited the case of *Commonwealth v. Leatherbury*, 269 Pa.Super. 91, 409 A.2d 78 (1979), but it does not provide support for Appellant's position. In *Leatherbury* the issue was whether officers had probable cause to arrest appellant who had acted as a middleman in arranging a drug transaction between an undercover agent and appellant's brother. Our Court ruled that there was probable cause for the officers to effectuate a warrantless arrest of appellant since the agent's observation gave rise to probable cause that the appellant intended to help his brother with the sale and was an accessory to the sale. In a footnote, our Court also raised a number of hypothetical questions unrelated to the disposition of the case, which it did not attempt to address. Thus *Leatherbury* has no precedential value in this matter.

was done in furtherance of the conspiracy." *Commonwealth v. Hennigan,* 753 A.2d 245, 253 (Pa.Super.2000). "This overt act need not be committed by the defendant; it need only be committed by a co-conspirator." *Id.* "The intent required for criminal conspiracy is identical to that required for accomplice liability. In both crimes a defendant must act with the intent of promoting or facilitating the offense." *Commonwealth v. Davenport,* 307 Pa.Super. 102, 452 A.2d 1058, 1062 (1982). However, a mere finding that an individual was an accomplice of the criminal actor does not automatically establish that the individual was a conspirator with the actor. Accomplice liability and conspiracy are not one and the same crime. *Commonwealth v. Petrie,* 277 Pa.Super. 239, 419 A.2d 750, 752 (1980). Conspiracy requires proof of an additional factor which accomplice liability does not, namely the existence of an agreement. *Commonwealth v. Graves,* 316 Pa.Super. 484, 463 A.2d 467, 469 (1983).

¶ 26 As our Court has further explained with respect to the agreement element of conspiracy:

The essence of a criminal conspiracy is a common understanding, no matter how it came into being, that a particular criminal objective be accomplished. Therefore, a conviction for conspiracy requires proof of the existence of a shared criminal intent. An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities. Thus, a conspiracy may be inferred where it is demonstrated that the relation, conduct, or circumstances of the parties, and the overt acts of the co-conspirators sufficiently prove the formation of a criminal confederation. The conduct of the parties and the circumstances surrounding their conduct may

create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt. Even if the conspirator did not act as a principal in committing the underlying crime, he is still criminally liable for the actions of his co-conspirators taken in furtherance of the conspiracy.

*Commonwealth v. Johnson,* 719 A.2d 778, 784–785 (Pa.Super.1998) (*en banc* ), *appeal denied,* 559 Pa. 689, 739 A.2d 1056 (1999) (citations and internal quotation marks omitted).

¶ 27 The totality of the evidence adduced in this case viewed in a light most favorable to the Commonwealth was sufficient to sustain Appellant's conviction for conspiracy. As discussed previously, when Appellant brought Rivas over to the trooper, Rivas asked Appellant whether the trooper was "a cop," and Appellant replied that he was not. Then, without any other questioning by Rivas, or any other further statements being made by any of the parties, Rivas *immediately* asked the trooper how much he was willing to spend and "how many bags he wanted." This indicated that Rivas already knew, without having to ask, the sole reason that Appellant had brought him over to the trooper, namely that the trooper was a prospective heroin buyer. This fact, coupled with Appellant's assurances that the trooper was not a police officer, circumstantially, but strongly indicates the existence of a preexisting agreement between Rivas and Appellant whereby Appellant would prescreen prospective heroin customers to attempt to ascertain if they were law enforcement and then, if Appellant received what he deemed to be a satisfactory answer, call Rivas over so that Rivas could consummate the transaction and make the actual delivery. Thus, under these specific circumstances, the jury could properly infer Appellant's conspiracy with Rivas to deliver drugs. "[T]he fact that the evidence establishing a defendant's

participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence." *Davenport, supra* 452 A.2d at 1060; *See also Commonwealth v. Lanager,* 360 Pa.Super. 578, 521 A.2d 53 (1987) (evidence sufficient to sustain conviction for conspiracy to deliver controlled substances, even though appellant did not physically handle drugs, when appellant arranged for drug dealer to meet with agent, dealer sold and delivered drugs to the agent and, at the conclusion of the sale, appellant requested compensation from agent for his role in arranging the sale); *Cameron, supra,* 372 A.2d at 906 (where appellant took agent to dealer and agent purchased drugs directly from dealer, jury could properly infer existence of a single agreement to deliver drugs based upon appellant's participation in that specific sale).

¶ 28 Appellant cites *Commonwealth v. Mills,* 329 Pa.Super. 196, 478 A.2d 30 (1984) as support for his contention that the evidence was insufficient to support his conviction for conspiracy to deliver heroin, but that case is distinguishable on its facts. In *Mills* the appellant was merely present in an apartment with another individual name "Gola" and some other people, while an undercover agent was attempting to acquire narcotics. Appellant informed the agent that he had paid for a quantity of narcotics from another person and asked if the agent was willing to wait, but the agent declined. Appellant then accompanied Gola, the other individuals and the agent in a car as they traveled to the house of another known narcotics supplier. The purchase was never completed since the supplier was not at home. Nevertheless, appellant was charged with conspiracy with Gola to deliver narcotics.

¶ 29 Our Court held that the evidence was insufficient to sustain Appellant's con-

viction. We held that neither appellant's offer to try to obtain narcotics for the agent in the apartment, nor his mere presence in the car on the way to the other dealer's house was sufficient to establish his conspiracy to deliver a controlled substance. Our Court noted specifically that there was no evidence that appellant made an agreement with Gola to procure drugs from the dealer whom they had traveled to see, nor was there evidence of Appellant's criminal intent in traveling with the other individuals to the dealer's house. Our Court also took notice of the lack of any evidence that Gola and appellant had engaged in any prior dealings concerning the sale of narcotics, as well as the fact that there were "no statements of either the appellant or Gola concerning their association which would indicate any joint criminal intent to procure drugs. Moreover there [was] absolutely no evidence that the appellant knew [the dealer] or had any prior dealings with him; nor [was] there evidence that the appellant was to participate in or profit from the transaction." *Id.,* 478 A.2d at 33.

¶ 30 The role of the appellant in *Mills* was that of a passive bystander, in contrast to the role of Appellant in the case at bar, which was to be the primary catalyst for the sequence of events which culminated in the delivery of the heroin by Rivas. As recounted above, after Appellant decided to help the trooper obtain heroin, and was satisfied that he was not a police officer, he immediately called Rivas over. This coupled with his assurance to Rivas that the trooper was not a police officer circumstantially indicated a prior agreement or arrangement between he and Rivas to help Rivas deliver quantities of heroin to suitable and willing buyers. Appellant, unlike the appellant in *Mills* was also present at the time that the trooper and Rivas began discussions concerning the delivery of the heroin and also

**1040** 

when Rivas returned with the heroin. Appellant was therefore fully aware of what was transpiring. Moreover, again unlike the appellant in *Mills*, Appellant here sought a portion of the drugs from the trooper and ultimately received compensation for his role in arranging the delivery by Rivas. As such his conviction for conspiracy was proper.

 ¶ 31 In Appellant's second issue he challenges the Trial Court's failure to instruct the jury on the buyers' agent defense. As the Supreme Court has aptly reminded:

A trial court has broad discretion in phrasing its instructions to the jury and can choose its own wording so long as the law is clearly, adequately and accurately presented to the jury for consideration. *Commonwealth v. Hawkins*, 549 Pa. 352, 390, 701 A.2d 492, 511 (1997), cert. denied, [523] U.S. [1083], 118 S.Ct. 1535, 140 L.Ed.2d 685 (1998). Furthermore, a trial court need not accept counsel's wording for an instruction, as long as the instruction given correctly reflects the law. *Commonwealth v. Ohle*, 503 Pa. 566, 582, 470 A.2d 61, 70 (1983). In reviewing a challenged jury instruction, an appellate court must consider the entire charge as a whole, not merely isolated fragments, in order to ascertain whether the instruction fairly conveys the legal principles at issue. *Commonwealth v. Jones*, 546 Pa. 161, 192, 683 A.2d 1181, 1196 (1996).

*Commonwealth v. Gibson*, 553 Pa. 648, 720 A.2d 473, 481 (1998). "[A jury] instruction will be upheld if it clearly, adequately and accurately reflects the law." *Commonwealth v. Brown*, 786 A.2d 961, 966 (Pa. 2001). However, "a trial judge may properly refuse to read points for charge submitted by defense counsel which do not reflect a proper articulation of the law of our Commonwealth." *Commonwealth v.*

*Slyman*, 334 Pa.Super. 415, 483 A.2d 519, 528 (1984).

 ¶ 32 Since we have already determined that the "buyer's agent defense" is inapplicable as a matter of law to this particular case, given the nature of the specific offenses for which Appellant was charged, the Trial Court committed no error in declining to give a charge based on that defense to the jury. We have reviewed the remainder of the Trial Court's charge to the jury and deem it satisfactory. The Trial Judge explained to the jury the relevant legal requirements which the Commonwealth was required to establish beyond a reasonable doubt in order for them to find Appellant guilty under the theories of accomplice liability and criminal conspiracy, *See* N.T. Trial, *supra*, 185–187. Since the Trial Judge's explanation of those elements clearly, adequately, and accurately reflected the law in those areas, the Trial Court's charge was proper.

¶ 33 Having reviewed Appellant's claims of error and finding them to be without merit, we are required to affirm his judgment of sentence. Judgment of sentence affirmed.