J-A08027-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JOSEPH WILLIAMS | : | |
| | : | |
| Appellant | : | No. 1158 WDA 2020 |

Appeal from the Judgment of Sentence Entered February 4, 2020
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0007808-2019

BEFORE:  BENDER, P.J.E., LAZARUS, J., and McCAFFERY, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED: JUNE 10, 2022**

Joseph Williams appeals from the judgment of sentence, entered in the Court of Common Pleas of Allegheny County, following his conviction of conspiracy to commit criminal mischief.[1]  After careful review, we reverse Williams' conviction and vacate his judgment of sentence.

At trial, the Commonwealth presented the testimony of Janet Kemp, the victim; William Grayson, Kemp's neighbor; and Munhall Borough Detective Thomas Fullard.  Kemp testified that she returned from a one-week vacation on April 13, 2019, to find that all of the tires on her car had been slashed. Kemp testified that the tires cost approximately $530.75.

Grayson had a home surveillance system that recorded the perpetrator slashing Kemp's tires.  Grayson approached Kemp and provided the video to

---

[1] 18 Pa.C.S.A. § 903.

her and, ultimately, Officer Fullard. Grayson's video captures the incident from the roof of Grayson's house across the street, angled downwards towards the street.[2] Grayson's home surveillance system records audio, but was unable to capture any audio from the events of this case. N.T. Non-Jury Trial, 2/4/20, at 20.

The video reveals that at approximately 2:56:22 a.m., during the week of April 6, 2019,[3] an unidentified man[4] walked out from between two row houses and approached Kemp's car. The unidentified man bent down and disappeared from sight for a brief time. He then reappeared and slashed the driver's side tires of Kemp's car. The unidentified man finished slashing all four tires by 2:59:42 a.m. and then ran back between the two row houses. At approximately 3:00:13 a.m., a truck, later identified as Williams' truck, drove past the homes towards the dead-end street of East 10th Avenue.[5] A

_____

[2] This video was admitted at trial as Commonwealth Exhibit 2. N.T. Non-Jury Trial, 2/4/20, at 18.

[3] We note that, at trial, the Commonwealth did not present a specific date for the surveillance video, or the events depicted on it. Rather, the Commonwealth merely presented evidence that the events took place at some point during the week of April 6, 2019, while Kemp was on vacation. However, our review of the record reveals that the Affidavit of Probable Cause asserts the tire slashing occurred in the early morning hours of April 10, 2019. *See* Affidavit of Probable Cause, 6/20/19, at 2.

[4] This individual remains unidentified.

[5] Both Williams and Kemp own homes on East 10th Avenue, with one house in between their residences. At the time of this incident, Williams was not currently living at his home due to recent fire damage. However, Grayson
*(Footnote Continued Next Page)*

few moments later, at 3:01:28, Williams' truck re-entered the video and parked in front of his home.

At approximately 3:01:36, Williams exited his truck, left it running, and approached his porch. As Williams approached his porch, the unidentified male ran, from approximately 3:01:46 to 3:01:49, to Williams' car and entered the passenger seat. Eight seconds later, at 3:01:57, Williams began walking toward his vehicle and looked into the passenger side of the truck for 2 seconds, from approximately 3:02:07 to 3:02:09. Williams walked around the rear of his truck and, at 3:02:21, Williams entered the driver's seat of his truck.[6] Williams and the unidentified man remained in the vehicle together for approximately 1 minute and 30 seconds. Afterwards, the unidentified man exited the truck and ran between two row houses, in the direction of Williams' back yard, before he disappeared from view. Williams remained in front of his home in his vehicle for roughly four more minutes before he drove away. Williams did not file a police report.

_____

testified that Williams would regularly "come late at night[,] usually to [] check his mail[.]" N.T. Non-Jury Trial, 2/4/20, at 16-17.

[6] We note that, while the parties had supplemented the certified record with the DVD containing the surveillance video, the video does not contain the final 5 minutes of the interaction. Nevertheless, this does not impede our review, because both parties agree that the trial court's summaries and timestamps for the remaining 5 minutes are accurate. *See* Trial Court Opinion, 8/3/21, at 3-5; Brief for Appellant, at 6-8 (adopting trial court's factual summary); Brief for Appellee, at 5-7 (adopting trial court's factual summary).

Williams was charged with conspiracy to commit criminal mischief and criminal mischief.[7] On February 4, 2020, Williams proceeded to a non-jury trial. At the close of the Commonwealth's evidence, Williams made a motion for acquittal on all charges. The trial court granted Williams' motion with respect to criminal mischief, but denied the motion as to criminal conspiracy. Williams testified in his own defense. At the end of trial, the trial court determined that Williams was not credible and convicted him of conspiracy to commit criminal mischief. Immediately following trial, Williams proceeded to sentencing, at which time the trial court sentenced him to two to twelve months' incarceration,[8] 20 hours of community service, and to pay $580.75 in restitution.

Williams filed a timely post-sentence motion, which was denied by operation of law. Williams filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Williams now raises the following claims for our review:

> I. Whether the Commonwealth presented sufficient evidence to prove, beyond a reasonable doubt, that [] Williams entered into an agreement to commit or aid in an unlawful act with another person or persons, as required to sustain a conviction for [c]riminal [c]onspiracy?
>
> II. Whether the Commonwealth presented sufficient evidence to prove, beyond a reasonable doubt, that [] Williams and another person possessed mutual specifi[c] intent to carry out a mutual

---

[7] 18 Pa.C.S.A. § 3304(a)(2).
[8] On March 16, 2020, Williams filed a motion for early parole in light of the COVID-19 pandemic, which the trial court granted on March 18, 2020.

criminal objective, as required to sustain a conviction for [c]riminal [c]onspiracy?

Brief for Appellant, at 5.

We address Williams' claims together, as he does so in his brief. Williams argues that the Commonwealth failed to present any evidence of an agreement between Williams and the unidentified man. Additionally, Williams asserts that the Commonwealth failed to present sufficient evidence that he and the unidentified man had a shared conspiratorial intent to slash Kemp's tires. Williams argues, relying on **Commonwealth v. Rosario**, 248 A.3d 599, 611 (Pa. Super. 2021), that his mere presence at the scene and his mere association with the unidentified man after the tire slashing are insufficient to sustain his conviction. Brief for Appellant, at 26-27. Williams claims that the trial court, in its opinion, did not find him guilty based on sufficient evidence, but rather because the trial court did not believe Williams' version of events. *Id.* at 23. We agree.

Williams' claims challenge the sufficiency of the evidence, for which we adhere to the following standard of review:

> [W]hether[,] viewing all the evidence admitted at trial, in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not [re-]weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that[,] as a matter of law[,] no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element

of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated[,] and all evidence received must be considered. Finally, the [trier] of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

*Commonwealth v. Smith*, 97 A.3d 782, 790 (Pa. Super. 2014) (citation omitted).

A person is guilty of conspiracy with another person or persons to commit a crime if[,] with the intent of promoting or facilitating its commission[,] he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S.A. § 903(a).

Simplified, this requires proof of three elements: (1) an agreement, (2) shared criminal intent, and (3) an overt act. *See Commonwealth v. Murphy*, 795 A.2d 1025, 1037-38 (Pa. Super. 2002). The "overt act need not be committed by the defendant; it need only be committed by a co-conspirator." *Commonwealth v. Hennigan*, 753 A.2d 245, 253 (Pa. Super. 2000). Our Supreme Court has explained:

At the heart of every conspiracy lies the common understanding or agreement between the actors. Implicit in any conspiracy is proof . . . that an accused agrees to participate in the alleged criminal activity. The criminal union being prosecuted cannot be based upon an agreement to complete a broad undefined objective at some unknown point. Rather, the agreement must rest upon the mutual specific intent to carry out a particular

criminal objective. The *sine qua non* of a conspiracy is the shared criminal intent. Without this common purpose, a conspiracy cannot be maintained.

Proving the existence of such an agreement is not always easy and is rarely proven with direct evidence. An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities. Indeed, a conspiracy may be proven inferentially by showing the relation, conduct, or circumstances of the parties, and the overt acts of alleged co-conspirators are competent as proof that a criminal confederation has in fact been formed.

**A conspiracy cannot be established based only upon mere suspicion and conjecture**. Preexisting relationships or **mere association of participants**, without more, will not suffice to establish a prosecutable criminal conspiracy. **Mere association with the perpetrators, mere presence at the scene, or mere knowledge of the crime is insufficient to prove that a particular actor was involved in a criminal conspiracy**. . . . The Commonwealth still must demonstrate the formation of an illicit agreement, the attendant specific shared intent to promote or facilitate the object offense, and an overt act. No level of intimacy or history between actors can replace the elements of the offense.

*Commonwealth v. Chambers*, 188 A.3d 400, 410 (Pa. 2018) (emphasis added, citations and quotations omitted).

Our review of the record reveals that the facts of this case, summarized above, do not support Williams' conviction for criminal conspiracy. In convicting Williams, the trial court relied almost exclusively on Williams' lack of credibility. *See* Trial Court Opinion, 8/3/21, at 6-7. However, Williams' lack of credibility cannot replace the Commonwealth's burden of proof. *See Commonwealth v. Torres*, 766 A.2d 342, 345 (Pa. 2001) (disbelief of

defendant's version of events "is no substitute for the proof the Commonwealth was required to provide").

Moreover, integral to our analysis of this case is the surveillance video. The video shows that the unidentified man committed an overt act by slashing Kemp's tires, but does not support the trial court's conclusion that Williams and the unidentified man had entered into an agreement and had a shared criminal intent. Rather, the video reveals that Williams arrived at the scene **after** the tires had been slashed and that Williams had an eventual encounter with the unidentified man for approximately 1 minute and 30 seconds in Williams' vehicle. **See** Trial Court Opinion, 8/3/21, at 4-5; **see also** Commonwealth Exhibit 2, at 3:02:21. Importantly, the Commonwealth presented no other evidence to support its case. Indeed, the record is devoid of any phone records, conversations between Williams and the unidentified man, or even the identity of the "mystery tire slasher."

In light of the foregoing, we conclude that the Commonwealth has not presented sufficient evidence to establish that Williams and the unidentified man entered into an agreement or shared a common criminal intent. **Chambers**, **supra**. The Commonwealth is required to present **something more** than Williams' mere presence at the scene and eventual encounter with the tire slasher. **Chambers**, **supra**. Even with all inferences in favor of the Commonwealth, these facts cannot support Williams' criminal conspiracy conviction. 18 Pa.C.S.A. § 903(a); **Smith**, **supra**. Accordingly, we reverse Williams' conviction and vacate his judgment of sentence.

Conviction reversed. Judgment of sentence vacated. Jurisdiction relinquished.

Bender, J., Joins the Memorandum.

McCaffery, J., Concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/10/2022