J-S35042-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| KENNETH NELSON, JR., | : | |
| | : | |
| Appellant | : | No. 1291 EDA 2015 |

Appeal from the Judgment of Sentence March 2, 2015
in the Court of Common Pleas of Philadelphia County,
Criminal Division, No(s): CP-51-CR-0006090-2014

BEFORE:  FORD ELLIOTT, P.J.E., BENDER, P.J.E. and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                    **FILED JUNE 08, 2016**

Kenneth Nelson, Jr. ("Nelson") appeals from the judgment of sentence imposed following his conviction of firearms not to be carried without a license.[1]  We affirm.

In its Opinion, the trial court set forth the relevant factual and procedural background, which we adopt herein for purposes of this appeal. *See* Trial Court Opinion, 8/4/15, at 1-6.

On appeal, Nelson raises the following issues for our review:

1. Was [Nelson's] conviction against the clear weight of the evidence where the uncontradicted testimony established that [Nelson] was acting in the scope of his employment at the time of his arrest for possessing an unlicensed firearm?

2. Was the evidence sufficient to support [Nelson's] conviction [of] violating 18 Pa.C.S.[A.] § 6106, firearms not to be carried without a license, where[,] at the time of his arrest, [Nelson] possessed a certificate of licensure pursuant to the

_____

[1] *See* 18 Pa.C.S.A. § 6106(a)(2).

Lethal Weapons Training Act[ ("the Act"),[2]] and was carrying his firearm in the scope of his employment?

3. Even if this Court determines that the evidence was sufficient to sustain [Nelson's] conviction [of] carrying a firearm without a license, was [Nelson] entitled to dismissal of this charge on the basis that [Nelson's] conduct constituted a *de minimus* infraction of the law?

Brief for Appellant at 4 (footnote added, some capitalization omitted, issues renumbered for ease of disposition).

In his first issue, Nelson contends that the trial court found him guilty of firearms not be carried without a license because it "disbelieved [Nelson's] testimony that he was acting within the scope of his employment and[,] thus[,] determined that [Nelson's] actions at the time of his arrest were outside the purview of [the] Act []." ***Id***. at 15. Nelson asserts that, because he was on his way to a restaurant supply store and was carrying a large amount of cash, he was acting within the scope of his duties as a security guard at the time of his arrest. ***Id***. at 17. Nelson points to the trial court's determination that he was not acting as a security guard at the time of his arrest because he had stopped his car to talk to another individual, and claims that the trial court's ruling "imposes an unduly restrictive interpretation of the Act's definition of "on duty or going to and from duty." ***Id***. (citing 22 Pa.C.S.A. § 48(a)). Nelson argues that the trial court's "misunderstanding of the scope and application of [the] Act" constitutes an abuse of discretion. Brief for Appellant at 18.

---

[2] ***See*** 22 Pa.C.S.A. § 41, *et seq.*

The trial court set forth the relevant law, addressed Nelson's weight of the evidence claim, and determined that it lacked merit. *See* Trial Court Opinion, 8/4/15, at 7-9. We agree with the sound reasoning of the trial court and affirm on this basis as to Nelson's first issue. *See id*.

In his second issue, Nelson contends that he was convicted of firearms not to be carried without a license because the Commonwealth introduced into evidence a certificate of non-licensure which showed that he did not possess a valid license to carry a firearm. Brief for Appellant at 9. Nelson asserts that, because he possessed a certification issued under the Act, and was acting within the scope of his employment at the time of his arrest, his conviction under 18 Pa.C.S.A. § 6106(a)(2)[3] cannot stand. *Id*. Nelson concedes that he was in constructive possession of a firearm at the time of his arrest, but claims that he was exempt from the firearm licensure requirement pursuant to sub-sections 6106(b)(6) and (11).[4] *Id*. at 12.

---

[3] Section 6106(a)(2) provides that "[a] person who is otherwise eligible to possess a valid license under this chapter but carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license and has not committed any other criminal violation commits a misdemeanor of the first degree." 18 Pa.C.S.A. § 6106(a)(2).

[4] Sub-sections 6106(b)(6) and (11) provide the following exemptions from the firearms licensing requirement: "(6) [a]gents, messengers and other employees of common carriers, banks, or business firms, whose duties require them to protect moneys, valuables and other property in the discharge of such duties[;] … (11) [a]ny person while carrying a firearm in any vehicle, which person possesses a valid and lawfully issued license for that firearm which has been issued under the laws of the United States or any other state." 18 Pa.C.S.A. § 6106(b)(6), (11).

Nelson argues that the uncontradicted evidence established that he (1) is the owner of a restaurant in North Philadelphia; (2) worked as the establishment's security guard; (3) in his capacity as security guard, carried large amounts of money from his restaurant to banks and restaurant supply stores; and (4) worked as a security guard for several bar owners. *Id*. at 13. Nelson contends that his qualification for certification under the Act showed that he was required to perform the duties of a security guard, thereby rendering him exempt from the firearm licensure requirement pursuant to section 6106(b)(6). *Id*. at 14. Nelson further asserts that, because he possessed a certification under the Act, he was exempt from the firearm licensure requirement pursuant to section 6106(b)(11). *Id*.

The trial court set forth the relevant law, addressed Nelson's sufficiency claim, and determined that it lacked merit. *See* Trial Court Opinion, 8/4/15, at 6-7, 9-10. We agree with the sound reasoning of the trial court and affirm on this basis as to Nelson's second issue. *See id*.

In his third issue, Nelson contends that, in the event that this Court determines that the evidence was sufficient to convict him under section 6106(a)(2), this Court should nevertheless vacate his judgment of sentence on the basis that his conduct constituted a *de minimus* infraction of the law. Brief for Appellant at 19.

Here, Nelson failed to raise this issue in his court-ordered Pa.R.A.P. 1925(b) Statement of Matters Complained of on Appeal. Accordingly, Nelson failed to preserve this issue for our review. ***See Commonwealth v. Lord***, 719 A.2d 306, 309 (Pa. 1998) (holding that, when an appellant is directed to file a concise statement of matters to be raised on appeal pursuant to Pa.R.A.P. 1925(b), any issues not raised in that statement are waived).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/8/2016

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

COMMONWEALTH OF PENNSYLVANIA :      CP-51-CR-0006090-2014

**FILED**

v.                      AUG 0 4 2015      :

Criminal Appeals Unit
KENNETH NELSON JR. First Judicial District of PA

:      **SUPERIOR COURT**
       **NO. 1291 EDA 2015**

**OPINION**

THOMAS STREET, J.                                    August 4, 2015

I.      **OVERVIEW AND PROCEDURAL HISTORY**

This is an appeal by the Defendant, Kenneth Nelson Jr., of this Court's Judgment of

Sentence entered on March 2, 2015. The Defendant was arrested and charged with Firearms Not

To Be Carried Without a License,[1] Intentionally Possessing A Controlled Substance By A Person

Not Registered,[2] Possession of Marijuana,[3] and Carrying Firearms on Public Streets or Public

Property in Philadelphia[4] for events that occurred on May 11, 2014. The Defendant filed a

Motion to Suppress physical evidence and a Motion to Quash on August 5, 2014. On September

30, 2014, a Motion to Quash was heard before Judge Michael Erdos and denied. On March 2,

2015, a non-jury trial was held before this Court at which time the Defendant was found guilty of

Firearms Not To Be Carried Without a License and sentenced to thirty-six (36) months reporting

probation. (N.T. 3/2/2015 p. 39).

CP-51-CR-0006090-2014 Comm. v. Nelson, Kenneth Jr.
Opinion



7327679121

---

[1] 18 Pa. C.S.A. § 6106
[2] 35 Pa. P.S. § 780-113 §§ A16
[3] 35 Pa. P.S. § 780-113 §§ A31
[4] 18 Pa. C.S.A. § 6108

1

On March 9, 2015, the Defendant filed post sentence motions. On April 15, 2015, this Court denied the Defendant's Motion for Reconsideration without a hearing. On May 4, 2015, the Defendant filed a timely Notice of Appeal. On June 24, 2015, pursuant to Pa.R.A.P. 1925 (b), this Court ordered a Concise Statement of Errors Complained of on Appeal within twenty-one (21) days. On July 6, 2015, the Defendant filed a Concise Statement of Errors Complained of on Appeal.

## II.    FACTUAL HISTORY

On May 11, 2014, at 3:52 p.m., Philadelphia Police Officer Joseph Czepiel, assigned to the 14th District was on duty.[5] (N.T. 3/2/15 p. 9). Officer Czepiel testified that he first came into contact with the Defendant in the area of the 5700 block of Germantown Avenue in Philadelphia, Pennsylvania, while driving on normal routine patrol in the area at 3:23 p.m. (N.T. 3/2/15 pp. 9, 10). Officer Czepiel stated that the Defendant was parked in a 2011 Dodge Charger, silver in color, which the Defendant owned and operated. *Id.* Officer Czepiel stated he saw a gentleman leaning into the passenger side window of the Defendant's car, which he believed may have been a drug transaction due to the area. *Id.*

Officer Czepiel testified that the gentleman, who was leaning in on the passenger side window of the Defendant's vehicle looked in the officers' direction and then started walking quickly across Germantown Avenue. *Id.* Officer Czepiel stated that his partner stopped that male and he did have narcotics on him, so he was arrested for a narcotics violation. *Id.* Officer Czepiel stated he went over to the Defendant's car to talk to him to find out what was going on with the male that had left the Defendant's vehicle. *Id.* Officer Czepiel stated the Defendant was very irate and recording with his phone the whole time. *Id.* Officer Czepiel stated he told the

---

[5] References to the record refer to the transcript of the non-jury trial and sentencing recorded on March 2, 2015.

2

Defendant "he was allowed to record, but he was under police investigation at this time and needed to put the phone down." *Id.*

Officer Czepiel testified that when backup officers arrived, the Defendant placed a baggie in the glove box of his vehicle, pulled out his registration and insurance, and closed the glove box shut. (N.T. 3/2/15 p. 11). Officer Czepiel stated that the Defendant was then taken out of the vehicle for a pat down due to the other male getting locked up for the narcotics violation. *Id.* Officer Czepiel stated he believed that the Defendant placed narcotics in the glove box or that there could be a weapon in the glove box. *Id.* Officer Czepiel stated "we were told from day one that when there are drugs, there are guns," so he wanted to make sure he would be safe before putting the Defendant back in the car. *Id.* Officer Czepiel testified he then looked into the glove box and recovered a white baggie, which contained a green weed substance alleged to be marijuana. *Id.* Officer Czepiel stated that the Defendant was then arrested and the officer conducted a search of the vehicle. (N.T. 3/2/15 pp. 11-12).

Officer Czepiel testified that during the search, he found a silver Smith & Wesson gun in the trunk containing six (6) live rounds in a black holster. (N.T. 3/2/15 p. 12). Officer Czepiel described the trunk as "clean and the gun was the only thing in there." *Id.* Officer Czepiel described the placement of the gun as "on the right side, not tucked under anything, out in plain view." *Id.* Officer Czepiel stated the Defendant gave him a Pennsylvania registration and insurance card, which showed he was the owner of the vehicle. *Id.* Officer Czepiel stated the Defendant provided him with a permit to carry a firearm from Florida and an Act 235 card. (N.T. 3/2/15 p. 13). Officer Czepiel testified that he and his Sergeant tried to confirm the Act 235 card with the State Police, but were unable to ascertain if it was valid or not. *Id.* Officer Czepiel stated that the Defendant was not wearing a security guard uniform. *Id.*

3

On cross-examination, Officer Czepiel testified that he gave the Act 235 card and the Florida license to carry to the assigned detective. (N.T. 3/2/15 p. 14). Officer Czepiel stated that he tried to confirm the Act 235 card by telephone and that State Police couldn't confirm it. *Id.* He then ceased investigation as far as the Act 235 card because the Defendant was under arrest for the narcotics violation. *Id.*

The Commonwealth marked and moved C-1, the report from the Firearms Identification Unit, indicating that the weapon that was recovered from the Defendant was operable, and C-2, the certificate of nonlicensure, showing that the Defendant did not possess a valid license to carry a firearm under the provisions of 6109 of the Crimes Code or under the provisions of 6106(c). (N.T. 3/2/15 p. 15).

The Defendant testified that on May 11, 2014 he was the driver of the vehicle. (N.T. 3/2/15 p. 17). The Defendant stated he gave the officer a copy of the Act 235 card. *Id.* The Defendant stated the Act 235 card is for the Lethal Weapons Training Program, which he is a part of in Pennsylvania. *Id.* The Defendant stated the Act 235 card's expiration was September 30, 2014 and that it was valid on the day of May 11, 2014. (N.T. 3/2/15 p. 18). The Defendant also stated the Act 235 card remains valid for a period of five (5) years. *Id.* The Defendant explained that the Act 235 card provided him with The Lethal Weapons Act 235 status, which allows him to carry a firearm to work, from work, and during work. (N.T. 3/2/15 pp. 18-19). The Defendant stated that he owned his own business and went through the Lethal Weapons Training Program, so he could carry a firearm for work. *Id.*

The Defendant stated he is the business owner of Sit Down Restaurant, located at 3557 North 5th Street in North Philadelphia, Pennsylvania. *Id.* The Defendant stated that he carries his firearm to get food and to the bank because he is carrying large amounts of money. (N.T. 3/2/15

4

p. 21). The Defendant also explained that he does security for different bar owners who do the same thing. *Id.* On the day in question, he was on his way to Restaurant Depot to prepare for a Mother's Day event later that evening when was arrested. (N.T. 3/2/15 p. 20). The Defendant testified the weapon was in his trunk because he stabbed himself in the hand earlier in the morning, which required him to leave Sit Down Restaurant and have someone else drive him to the hospital. (N.T. 3/2/15 p. 22). The Defendant stated that he was going to put the weapon in the kitchen but since he had to leave the business he placed it in the trunk. *Id.* He later stated that he wrapped the gun in an apron because he was in the kitchen. (N.T. 3/2/15 p. 24). The Defendant stated that the hospital had prescribed him two (2) Percocet. (N.T. 3/2/15 p. 22).

The Defendant testified that while picking up his cook, after he woke up late later that day, a man named Melvin Carson was on the passenger side of his vehicle and asked him if he was open that day. *Id.* The Defendant clarified that Melvin Carson was "nowhere near my vehicle." *Id.* The Defendant stated he answered "Yeah" to Melvin Carson's question and that was the end of their encounter. *Id.* The Defendant stated that five (5) or ten (10) minutes later he saw Melvin Carson being slammed by one of the police officers on the car. (N.T. 3/2/15 p. 23). The Defendant explained that he started recording the incident because Melvin Carson was slammed at least ten (10) or fifteen (15) times by the police officer. *Id.* The Defendant stated the police officers did not notice the Defendant at first but then noticed that he was recording. *Id.* The Defendant stated that a police officer walked towards his car and said "Stop recording, stop recording." *Id.*

On cross-examination, the Defendant affirmed that his restaurant is located at 3557 North 5th Street, which is on the east side of Broad Street. (N.T. 3/2/15 p. 24). The Defendant testified that he lives at 6053 Philip Street in Philadelphia which is also on the east side of Broad Street.

5

*Id.* The Defendant stated that it is basically a straight shot north to get from his home to his restaurant. (N.T. 3/2/15 p. 23). The Defendant affirmed that he was stopped at 5700 Germantown Avenue in Philadelphia, on the west side of Broad Street. (N.T. 3/2/15 p. 25). He explained that he was on the west side of Broad Street because he was going towards the Restaurant Depot to get supplies. (N.T. 3/2/15 pp. 25-26). The Defendant testified he left the hospital and went home. *Id.* From his home, he woke up for the event "still high off the medication" the hospital had given him and rushed to the Restaurant Depot on Hunting Park Avenue in Philadelphia to get supplies. *Id.* The Defendant stated he has a membership to shop at the Restaurant Depot. *Id.*

## III.     ISSUES

In the Pa.R.A.P. 1925(b) Concise Statement of Matters Complained of on Appeal, the Defendant identified the following issues:

1. The verdict was against the weight of the evidence concerning the conviction of VUFA Section 6106 (a) (2).

2. The evidence was insufficient to support a conviction as there was no proof beyond a reasonable doubt that appellant was guilty of a violation of VUFA Section 6106 (a) (2).

## IV.     STANDARD OF REVIEW

A challenge to the sufficiency of evidence is a question of law. *Commonwealth v. Heater*, 2006 PA Super 86, 11, 899 A.2d 1126, 1131 (2006) (*citing Commonwealth v. Widmer*, 560 Pa. 308, 319, 744 A.2d 745, 751 (2000)). The role of an appellate court in reviewing the weight of the evidence is very limited. *Commonwealth v. Holmes,* 444 Pa. Super. 257, 264, 663 A.2d 771, 774 (1995). When reviewing a sufficiency of the evidence claim, a court must review the evidence and all reasonable inferences in the light most favorable to the Commonwealth as the verdict winner, and must determine if the evidence, thus viewed, is sufficient to enable the

6

fact-finder to find every element of the offense beyond a reasonable doubt. *Commonwealth v. Valette,* 531 Pa. 384, 388, 613 A.2d 548, 549 (1992); *Commonwealth v. Marks,* 704 A.2d 1095 (Pa. Super. 1997).

A reviewing court may not weigh the evidence or substitute its own judgment for that of the fact-finder, who is free to believe all, part, or none of the evidence. *Commonwealth v. Adams,* 2005 Pa. Super. 296, 882 A.2d. 496, 498-99 (Pa. Super. 2005). An appellate court may reverse a lower court's verdict only in the instance that it is so contrary to the evidence as to shock one's sense of justice. *See Commonwealth v. Hunzer,* 868 A.2d 498, 506-507 (Pa.Super.2005), appeal denied, 584 Pa. 673, 880 A.2d 1237 (2005). Whether a new trial should be granted on the ground that a conviction was against the weight of the evidence is addressed to the sound discretion of the trial judge, and that decision will not be reversed on appeal absent a showing of abuse of discretion. *Commonwealth v. Petteway,* 847 A.2d 713, 716 (Pa. Super. 2004) (*citing Commonwealth v. Davis,* 799 A.2d 860, 865 (Pa. Super. 2002)).

Additionally, the Commonwealth may satisfy its burden of proof entirely by circumstantial evidence. *See Commonwealth v. Adams,* 2005 Pa. Super 296, 882 A.2d. 496, 499 (Pa. Super 2005); *see also Commonwealth v. Murphy,* 2002 PA Super 84, 795 A.2d 1025, 1038-39 (Pa. Super. 2002) ("The fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence."). "If the record contains support for the verdict, it may not be disturbed." *Adams,* 882 A.2d. at 499.

V.      **DISCUSSION**

First, the Defendant argues that the conviction under VUFA Section § 6106 (a) (2) is not supported by the greater weight of the evidence. This Court disagrees.

7

Section 6106 (a)(2) states:

> (2) A person who is otherwise eligible to possess a valid license under this chapter but carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license and has not committed any other criminal violation commits a misdemeanor of the first degree.

18 Pa.C.S.A. § 6106.

Here, the Commonwealth presented sufficient evidence which the fact finder was free to accept as true to sustain the Defendant's convictions.

It is undisputed that on the day in question, the Defendant was carrying a firearm in his vehicle and did not have a valid license to carry a firearm. The Defendant presented evidence that he was licensed to carry a firearm in Philadelphia under The Lethal Weapons Training Act 235. The Lethal Weapons Training Act, 22 Pa.C.S. § 41, et seq. (Act 235), was enacted to provide training in lethal weapons to private security enforcement personnel. *Commonwealth. v. Mitchell*, 81 Pa. D. & C.4th 75, 81 (Pa. Com. Pl. 2007) *aff'd,* 935 A.2d 17 (Pa. Super. 2007).

Upon satisfactory completion of a program developed under Act 235, an individual is issued a certificate, which such person is required to possess whenever on duty or going to and from duty and carrying a lethal weapon. *Id.* This certificate essentially eliminates the need for privately employed security personnel, like the Defendant, to maintain a license to carry a firearm while that person is on duty or is going to and from duty. *Id.*

The Defendant argues that he was headed to the Restaurant Depot to get supplies for his restaurant, so he was on duty and within the scope of his Act 235 status permitting him to carry a firearm. This Court disagrees.

By way of the Defendant's own admission, he carried a firearm in his vehicle without a valid and lawfully issued license by carrying it outside of the purview of Act 235. The Defendant

8

stated that he went through the Act 235 program because "If you're carrying a firearm, you can carry to work, from work, and during work." (N.T. 3/2/15 p. 19). The Defendant stated that on the morning of his arrest he woke up late and was rushing to the Restaurant Depot to get supplies for an event at his restaurant. However, the Defendant admitted that he was on the West side of Broad Street when he was stopped, when his home and restaurant are on the East side of Broad Street. (N.T. 3/2/15 p. 25).

Moreover, the Defendant stated he was sitting in his car talking to his cook for ten (10) minutes, which indicates that he was not in a rush. The Defendant also admitted to putting the gun in the trunk of his vehicle. Officer Czepiel conducted a search of the Defendant's vehicle and found a gun in the trunk. Accordingly, the evidence was sufficient to establish the charges of which the Defendant was found guilty. Upon review of the challenge, this Court concludes that the verdict was not against the weight of the evidence and does not reveal a verdict that is shocking to one's sense of justice.

Second, the Defendant argues that the Commonwealth failed to present sufficient evidence to sustain a conviction under § 6106 (a) (2). This Court disagrees.

Section 6106 (a) (2) states:

> (2) A person who is otherwise eligible to possess a valid license under this chapter but carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license and has not committed any other criminal violation commits a misdemeanor of the first degree.

18 Pa.C.S.A. § 6106.

As mentioned above it is undisputed that on the day in question, the Defendant was carrying a firearm in his vehicle and did not have a valid license to carry a firearm. The Defendant had an Act 235 card after completing the Lethal Weapons Training Program.

9

However, he was in fact parked on a public Philadelphia street interacting and talking with others when stopped and investigated by the police. As stated earlier, the Defendant was not actually travelling to or from work at the time of his arrest and therefore, he was carrying the firearm outside of the purview of Act 235.

As such, there was sufficient evidence presented to this Court to find the Defendant guilty of Firearms Not To Be Carried Without A License in Philadelphia.

## VI.      CONCLUSION

For all of these reasons, this Court's decision should be affirmed.

**BY THE COURT:**

_____
**SIERRA THOMAS STREET, J.**

Dated: August 4th, 2015

Re:    <u>Commonwealth v. Kenneth Nelson Jr.</u>
        **CP-51-CR-0006090-2014**
        **1291 EDA 2015**

## PROOF OF SERVICE

I hereby certify that I am this day serving the foregoing Court Order upon the person(s), and in the manner indicated below, which service satisfies the requirements of Pa.R.Crim.P. 114:

Defense Counsel:    **Glenn Gilman, Esquire**
                    **123 S. Broad St., Suite 2500**
                    **Philadelphia, PA 19109**

Type of Service:    ( ) Personal Service  (X) First Class Mail  ( ) Other: Inter-Office

District Attorney:    **Hugh J. Burns Jr., Esquire**
                    **Chief, Appeals Unit**
                    **Philadelphia District Attorney's Office**
                    **Widener Building - Three South Penn Square**
                    **Philadelphia, PA 19102**

Type of Service:    ( ) Personal Service  ( ) First Class Mail  (X) Other: Inter-Office

Date:  August 4, 2015

_Ashley Wilson_
Ashley Wilson, Judicial Secretary