**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ROCHELLE HARRIS | |
| Appellant | No. 741 EDA 2015 |

Appeal from the PCRA Order Entered February 9, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0002493-2008

BEFORE:  OLSON, STABILE, and STRASSBURGER,[*] JJ.

MEMORANDUM BY STABILE, J.:                    **FILED JUNE 20, 2016**

Appellant, Rochelle Harris, appeals from the trial court's February 9, 2015 order dismissing her petition pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-46.  We affirm.

The PCRA court summarized the pertinent facts:

> During the fall of 2005, Appellant and John May (hereinafter 'Mr. May'), an elderly gentleman who was 87 years old at the time, were neighbors on Lotus Road in Philadelphia. On October 12, 2005, Appellant knocked on Mr. May's front door and asked Mr. May if she could borrow seventy-five dollars.  Mr. May invited Appellant inside his home and took out his checkbook to loan her the money.  While Mr. May was writing the check in his dining room, Appellant asked Mr. May to get her a glass of water.  Mr. May got then [sic] up, leaving the checkbook on the dining room table, and went to the kitchen to

---

[*] Retired Senior Judge assigned to the Superior Court.

get her some water, as requested. While Mr. May was in the kitchen, the Appellant, and Mr. May's checkbook, were out of his sight. Mr. May then returned to the dining room with a glass of water for Appellant and, after a brief conversation, Appellant took the $75 check from Mr. May, thanked him, and left. Mr. May testified that no one else entered his house for the rest of that day.

The next day, October 13, 2005, at 9:23 a.m., one of Mr. May's checks written for $5,000, made out to Audra M. Bell and purportedly signed by Mr. May, was deposited into Audra Bell's bank account. "Wedding Gift" was written on the memo line of the check in the same cursive handwriting as the rest of the check. Audra Bell was a young woman in her early 20's and suffered from various mental and learning disabilities when this incident occurred. Mr. May was subsequently alerted to this forged check and the $5,000.00 theft from his bank account when he received an overdraft notice for his checking account a few days later. Mr. May quickly contacted police.

Upon review of the forged check, Mr. May testified that he did not know, had never met, and had no idea who Audra Bell was. Mr. May also was emphatic that he had "never in his life" written a check for $5,000. Furthermore, the forged check that was purportedly written and signed by him was in cursive handwriting that bore absolutely no resemblance [to] Mr. May's handwriting, including the $75 check he had written for Appellant the previous day.

[***]

At trial, James Miles (hereinafter "Mr. Miles"), a witness for the Commonwealth, established the connection between Audra Bell and Appellant. Mr. Miles was a close friend of Ms. Bell's and was raised alongside her. Mr. Miles testified that he had seen Appellant and Ms. Bell together on several occasions in the summer of 2002 and that he had dropped them off at different places together. Mr. Miles further testified that Audra Bell told him that she spent "most of her time with [Appellant]." Mr. Miles' testimony was critical evidence establishing the relationship and connection between the Appellant and Audra Bell. Unfortunately, Ms. Bell was not available to testify at trial as a witness because she was found murdered on November 1, 2005, with a gunshot wound to the head, and a .38-caliber cartridge next to her body. That murder has never been solved.

J-S26017-16

PCRA Court Opinion, 8/20/2015, at 2-4 (record citations omitted).

On August 25, 2009, the trial court, sitting as fact finder, found Appellant guilty of forgery, theft by deception, theft by unlawful taking, receiving stolen property, bad checks, and securing execution of documents by deception.[1]  On September 18, 2009, the trial court imposed an aggregate 12½ to 25 years of incarceration.  This Court affirmed the judgment of sentence on December 14, 2011.  On May 15, 2012, our Supreme Court denied allowance of appeal.

Appellant filed the instant, timely first PCRA petition on June 11, 2012. Appointed counsel filed an amended petition on December 6, 2013.  On October 15, 2014, the PCRA court issued its Pa.R.Crim.P. 907 notice of intent to dismiss Appellant's petition without a hearing.[2]  The PCRA court entered an order dismissing the petition on February 9, 2015, and this timely appeal followed.  Appellant raises two issues for our review:

> 1. Whether the trial court erred in failing to hold an evidentiary hearing on trial counsel's failure to challenge the use of a 13 years [sic] old pre-sentence evaluation report during sentencing and failure to present testimony that Appellant was in custody; and appellate counsel's failure to raise the use of this pre-sentence report during the direct appeal; and appellate counsel's ineffectiveness for failing to challenge the sufficiency of the evidence on appeal where the

_____

[1]  18 Pa.C.S.A. §§ 4101, 3922, 3921, 3925, 4105, and 4114, respectively.

[2]  The PCRA court's opinion incorrectly identifies October 15, 2014 as the date of dismissal of the petition.

- 3 -

> evidence failed to show [Appellant] wrote a check, deposited a check, or received proceeds from the check?
>
> 2. Whether [Appellant] was denied his [sic] right to counsel in violation of the 6th Amendment of the U.S. Constitution and in violation of [Article 1, § 9] of the Pennsylvania Constitution where trial counsel was informed by the Appellant that she was in state custody during the summer of 2002 and that she had never met Miles, counsel's failure to present this proof during trial denied her a fair trial, left Appellant without adequate representation, and constituted abandonment during trial in violation of the 6th Amendment of the U.S. Constitution and in violation of [Article 1, § 9] of the Pennsylvania Constitution?

Appellant's Brief at 3.

On appeal, we must determine whether the record supports the PCRA court's order and whether it is free of legal error. *Commonwealth v. Lesko*, 15 A.3d 345, 358 (Pa. 2011). Dismissal without a hearing is appropriate when the PCRA court is satisfied that the petition presents no issues of material fact and a hearing would serve no purpose. Pa.R.Crim.P. 907(1). To establish ineffective assistance of counsel, a PCRA petitioner must plead and prove that the underlying claim is of arguable merit, that counsel had no reasonable strategic basis for the act or omission; and that counsel's mistake prejudiced the petitioner. *Commonwealth v. Kimball*, 724 A.2d 326, 333 (Pa. 1999).

Appellant first argues that trial counsel was ineffective for permitting the sentencing court to rely on a 13-year-old pre-sentence investigation report. The PCRA court explained as follows:

- 4 -

> For reasons unknown, the [court-ordered] pre-sentence report was not received by this Court, the Commonwealth, or Appellant, at the time of sentencing. Despite this, Appellant's trial counsel agreed to proceed to sentencing, without the more recent pre-sentence investigation. Instead, trial counsel asked this Court to rely on a pre-sentence report that had been prepared on February 6, 1997 and then to present additional evidence regarding Appellant's alleged efforts to rehabilitate herself since the issuance of that earlier report.

PCRA Court Opinion, 8/20/2015, at 7.

Appellant argues trial counsel was ineffective because the sentencing court was not informed of Appellant's efforts at rehabilitation. As the PCRA court noted, however, it permitted counsel to present evidence of Appellant's alleged rehabilitation at sentencing. Further, the PCRA court noted that counsel's decision to rely on the outdated (1997) pre-sentence investigation report benefitted Appellant. The 1997 report reflected 57 arrests and 27 convictions, many of which involved theft, forgery, and credit card fraud. *Id.* at 8. By the time of Appellant's current sentencing, she had more than 80 arrests, 34 convictions, and numerous probation and parole violations. *Id.* at 9. For the reasons explained in the PCRA court's opinion, we agree that this issue lacks arguable merit.

The PCRA court also rejected Appellant's argument that counsel was ineffective for failing to challenge the sufficiency of the evidence on direct appeal. The PCRA court noted that Appellant's PCRA petition was vague on which element or elements of the various offenses were at issue. *Id.* at 10. The PCRA court also explained that the circumstantial evidence produced at

trial was more than sufficient to sustain Appellant's convictions. *Id.* at 10-11. We agree with the PCRA court that this issue lacks arguable merit.

Finally, the PCRA court addressed Appellant's contention that she was in custody during the summer of 2002, when James Miles purportedly observed Appellant with Audra Bell. The PCRA court rejected this claim because the relevant docket shows that Appellant was released on parole on May 14, 2002. *Id.* at 12-13. We agree with the PCRA court that this issue lacks arguable merit.

In summary, we have reviewed the parties' briefs, the record, the applicable law, and the PCRA court's opinion. We conclude that the PCRA court's opinion thoroughly and accurately addresses Appellant's assertions of error. We therefore affirm the order dismissing Appellant's PCRA petition for the reasons explained in the PCRA court's August 29, 2015 opinion. We direct that a copy of that opinion be filed along with this Memorandum.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/20/2016

- 6 -



IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA : | COURT OF COMMON PLEAS |
| : | CP-51-CR-0002493-2008 |
| v. : | |
| : | |
| : | SUPERIOR COURT |
| ROCHELLE HARRIS : | 741 EDA 2015 |
| : | |

## OPINION

ELLEN CEISLER, J.                                          DATE: August 20, 2015

The instant appeal pertains to this Court's denial of a Post-Conviction Relief Act (hereinafter "PCRA") Petition filed by Appellant Rochelle Harris (hereinafter "Appellant"), who is currently serving a sentence of 12 ½ to 25 years for Forgery, Theft by Unlawful Taking, Theft by Deception, Bad Checks, and Secured Execution of Documents by Deception. Appellant is requesting either a new trial, a new sentencing hearing, or the reinstatement of her direct appeal rights. For the reasons set forth below, this Court properly denied Appellant's PCRA Petition, as all claims were without merit and, as such, this Court respectfully maintains that this decision should be affirmed.

## I.    FACTUAL AND PROCEDURAL HISTORY

Setting forth the facts presented at trial, in the light most favorable to the Commonwealth as the prevailing party at trial,[1] the circumstances that led to Appellant's arrest, conviction, and sentencing are as follows:

---

[1] Com. v. Colavita, 993 A.2d 874, 886 (Pa. 2010) (citing Com. v. Sam, 952 A.2d 565, 573 (Pa. 2008)).

1

**EXHIBIT B**

During the fall of 2005, Appellant and John May (hereinafter "Mr. May"), an elderly gentleman who was 87 years old at the time, were neighbors on Lotus Road in Philadelphia.[2] N.T. 7/14/08 at 21. On October 12, 2005 Appellant knocked on Mr. May's front door and asked Mr. May if she could borrow seventy-five dollars. Id. at 21-22.[3] Mr. May invited Appellant inside his home and took out his checkbook to loan her the money. Id. While Mr. May was writing the check in his dining room, Appellant asked Mr. May to get her a glass of water. Id. Mr. May got then up, leaving the checkbook on the dining room table, and went to the kitchen to get her some water, as requested. N.T. 7/14/08 at 21-22. While Mr. May was in the kitchen, the Appellant, and Mr. May's checkbook, were out of his sight. Id. at 28-29. Mr. May then returned to the dining room with a glass of water for Appellant and, after a brief conversation, Appellant took the $75 check from Mr. May, thanked him, and left. Id. Mr. May testified that no one else entered his house for the rest of that day. Id. at 29.

The next day, October 13, 2005, at 9:23 a.m., one of Mr. May's checks written for $5,000, made out to "Audra M. Bell" and purportedly signed by Mr. May, was deposited into Audra Bell's bank account. Trial Ex. C-3C; N.T. 7/14/08 at 43. "Wedding Gift" was written on the memo line of the check in the same cursive handwriting as the rest of the check. Trial Ex. C-3C. Audra Bell, was a young women in her early 20's and suffered from various mental and learning disabilities, when this incident occurred. N.T. 7/14/08 at 54-55.[4] Mr. May was subsequently alerted to this forged check and the $5,000.00 theft from his bank account when he received an overdraft notice for his checking account a few days later.[5] Mr. May quickly contacted police. N.T. 7/14/08 at 27, 38.

---

[2] Appellant lived at 6642 Lotus Road, while Mr. May resided at 6640 Lotus Road. N.T. 7/14/08 at 21.

[3] Mr. May testified that he has written at least one additional check to Rochelle Harris (maiden name "Boone") on a prior occasion, in the amount of $433 for work that was done to install a fountain that was in between their two houses. Trial Ex. C-3C, C-3D, D1, D2; N.T. 7/14/08 at 37.

[4] See infra n.14 (discussing Mr. May's connection with Ms. Bell).

[5] There is some confusion on Mr. May's part as to the date when he learned of the issue with his checking account and the date that he talked to police about the check—sometime between October 15, 2005 and October 23, 2005. N.T. 7/14/08 at 38-39.

2

Upon review of the forged check, Mr. May testified that he did not know, had never met, and had no idea who Audra Bell was. Mr. May also was emphatic that he had "never in his life" written a check for $5,000. Furthermore, the forged check that was purportedly written and signed by him was in cursive handwriting that bore absolutely no resemblance Mr. May's handwriting, including the $75 check he had written for Appellant the previous day. Trial Exs. C-3C, C-3D, D1, D2

Appellant was arrested on October 31, 2005 on account of the suspicious check and charged with Theft by Unlawful Taking,[6] Theft by Deception,[7] Receiving Stolen Property,[8] Forgery,[9] Bad Checks,[10] and Securing Execution of Documents by Deception.[11] Appellant waived her right to a jury trial[12] and was tried in a bifurcated[13] bench trial before the Honorable Ellen Ceisler on July 14, 2008 and August 25, 2009. Appellant retained David Mischak, Esquire, a premier criminal defense attorney, to represent her.

At trial, James Miles (hereinafter "Mr. Miles"), a witness for the Commonwealth, established the connection between Audra Bell and Appellant. Mr. Miles was a close friend of Ms. Bell's and was raised alongside her.[14] Mr. Miles testified that he had seen Appellant and Ms.

---

[6] 18 Pa. C.S. § 3921.

[7] 18 Pa. C.S. § 3922.

[8] 18 Pa. C.S. § 3925.

[9] 18 Pa. C.S. § 4101.

[10] 18 Pa. C.S. § 4105.

[11] 18 Pa. C.S. § 4114.

[12] *See* N.T. 7/14/08 at 15-17.

[13] The trial was bifurcated by agreement of the Defense and Commonwealth as the assigned Detective had located a critical key witness just before trial. Defense counsel wanted to opportunity to investigate this witness. Other delays in resuming the trial were caused by the Appellant's subsequent arrest in Massachusetts for similar offenses after the instant trial had started. Appellant was incarcerated in Massachusetts and extradition and transportation issues resulted in delays.

[14] In his trial testimony, James Miles at first indicates that Audra Bell is his cousin, then clarifies that while they were not blood cousins, they did see each other every day when they were kids. N.T. 7/14/08 at 49. He also states that he "would look after Audra when nobody is around." Id. at 51.

3

Bell together on several occasions in the summer of 2002 and that he had dropped them off at different places together. N.T. 7/14/08 at 50-51. Mr. Miles further testified that Audra Bell told him that she spent "most of her time with [Appellant] Harris." Id. at 53. Mr. Miles' testimony was critical evidence establishing the relationship and connection between the Appellant and Audra Bell. Unfortunately, Ms. Bell was not available to testify at trial as a witness because she was found murdered on November 13, 2005, with a gunshot wound to the head, and a .38-caliber cartridge next to her body. N.T. 7/14/08 at 48; N.T. 8/18/09 at 10-11.[15] That murder has never been solved.

On August 25, 2009, this Court found the Appellant guilty of all charges. N.T. 8/25/09 at 22. A presentence investigation was ordered and sentencing was scheduled for September 18, 2009. On the date of sentencing, the pre-sentence investigation had not yet been submitted. Despite this, Appellant and counsel still wished to proceed to sentencing. After review of all relevant records related to the Appellant, and argument by all counsel, this Court sentenced Appellant Harris to an aggregate sentence of 12 ½ to 25 years' incarceration.[16]

Appellant filed post-sentence motions on September 23, 2009 which were denied by operation of law[17] on January 25, 2010. Appellant's new court-appointed attorney, Elayne Bryn, Esquire,[18] subsequently appealed this to the Superior Court of Pennsylvania, which ultimately

---

[15]*See also* Lorraine Gennaro, Police Report: Reward Offered in Murder, South Philly Review, Jan. 5, 2006, http://www.southphillyreview.com/news/police-report/body_discovered_in_burning_car-73689387.html?printView=y. She was last seen when a woman whom she had befriended picked her up. Her mother describes her mental state as "mildly mentally challenged and bipolar." Id.

[16] Appellant was sentenced to 3 ½ to 7 years for Theft by Unlawful Taking, 3 ½ to 7 years for Theft by Deception, 3 ½ to 7 years for Forgery, 1 to 2 years for Bad Checks, and 1to 2 years for Secure Execution of Documents by Deception. N.T. 8/18/09 at 18-19. The charge of Receiving Stolen Property was merged with the charge of Theft by Unlawful Taking for the purpose of sentencing. Id. at 6. All sentences were to run consecutively to each other and to any other sentence that Appellant was currently serving. Id. at 18-19.

[17] Pursuant to Pa. R.Crim.P. 720 (B)(3), if a judge fails to decide the motion within 120 days, the motion "shall be deemed denied by operation of law."

[18] On February 25, 2010, David Mischak filed a Motion to Withdraw as Counsel or to Remand to Trial Court for Appointment of Counsel on Appeal, indicating that Rochelle Harris was no longer able to pay for his services.

4

affirmed this Court on December 14, 2011.[19] The Supreme Court of Pennsylvania then denied Appellant's Petition for Allowance of Appeal on May 15, 2012.[20]

On June 11, 2012, Appellant Rochelle Harris filed the instant PCRA Petition *pro se*, seeking relief due to alleged ineffective assistance of counsel and imposition of an illegal and excessive sentence. On May 13, 2013, Sandjai Weaver, Esquire, was appointed as PCRA counsel to represent Appellant, and on December 6, 2013, PCRA Counsel filed an Amended Petition on behalf of Appellant. This Court denied the PCRA Petition on October 15, 2014, finding all of Appellant's claims to be without merit. Appellant appealed this denial to the Superior Court on March 11, 2015 and, pursuant to this Court's May 20, 2015 order, subsequently filed a 1925(b) Statement of Errors Complained of on Appeal on June 10, 2015, the substance of which is set forth, *verbatim*, herein:

1. Whether the trial court erred in failing to hold an evidentiary hearing on trial counsel's failure to challenge the use of a 13 years [sic] old pre-sentence evaluation report during sentencing and failure to present testimony that Appellant was in custody; and appellate counsel's failure to raise the use of this pre-sentence report during the direct appeal; and appellate counsel's ineffectiveness for failing to challenge sufficiency of the evidence on appeal where the evidence failed to show Petitioner wrote a check, desisted a check, or received proceeds from the check? [sic]

2. Whether the Defendant was denied his [sic] right to counsel in violation of the 6th Amendment of the U.S. Constitution and in violation of the Pennsylvania Constitution (Pa.Const. art. I, sec.9) where trial counsel was informed by the Appellant that she was in state custody during the summer of 2002 and that she had never met Miles, counsel's failure to present this proof during trial denied her a fair trial, left Appellant without adequate representation, and constituted abandonment during trial in violation of the 6th Amendment of the U.S. Constitution and in violation of the Pennsylvania Constitution (Pa.Const. art. I, sec.9)? [sic]

3. Whether the PCRA Court erred in failing to re-evaluate and resentence [sic] Appellant where the consecutive sentence imposed was illegal where the court abused its discretion by imposing a sentence far in excess of guideline recommendations, the sentence did not consider Petitioner's circumstances, failed

---

[19] 474 EDA 2010.

[20] 12 EAL 2012.

to consider mitigating factors, utilized a 13 year old pre-sentence report, and was harsh and unreasonable? [sic]

Defendant's Statement of Errors Complained of on Appeal Pursuant to Pa. R.A.P. 1925(b) at 1-2.

## II.    DISCUSSION

Despite Appellant's disorganized, overlapping, and vague Statement of Errors, this Court will attempt to parse out and address the various claims.

To be eligible for relief under the PCRA, a petitioner must plead and prove by a preponderance of the evidence that "(1) they have been convicted of a crime under the laws of the Commonwealth, (2) are, at the time relief is granted, currently serving a sentence of imprisonment,[21] (3) that the conviction or sentence resulted from one or more of the following - (a) a violation of the Constitution of the Commonwealth of the Constitution or law of the United States, (b) ineffective assistance of counsel, or (c) the imposition of a sentence greater than the lawful maximum,[22] (4) that in the circumstances of this particular case, this violation or ineffective assistance so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place, that (5) the allegation of error has not been previously litigated or waived, and finally that (6) the failure to litigate the issue prior to, during trial, or on appeal could not have been the result of any rational, strategic, or tactical decision by counsel." 42 Pa. C.S. § 9543.

There is no absolute right to an evidentiary hearing on a PCRA petition. If the PCRA court determines from the record that there are no genuine issues of material fact, then a court can decline to hold a hearing, as no purpose would be served by any further proceedings. Com. v. Jones, 942 A.2d 903, 906 (Pa. Super. Ct. 2008); Com. v. Taylor, 933 A.2d 1035, 1040 (Pa. Super. Ct. 2006). For the reasons set forth below, this Court did not find any underlying merit

---

[21] A petitioner is also eligible for relief under the PCRA if they are serving a sentence of probation or parole, or awaiting execution of a sentence of death. 42 Pa. C.S. § 9543.

[22] Additional PCRA claims that can be made, but which are irrelevant to the instant case, are: an unlawfully induced plea of guilty, the improper obstruction by government officials of the petitioner's right of appeal, the unavailability at the time of trial of exculpatory evidence that has subsequently become available, and a proceeding in a tribunal without jurisdiction. Id.

6

to the claims made by Appellant Harris and therefore did not hold an evidentiary hearing before denying her PCRA claims as without merit.

Each claim of ineffectiveness must be decided separately, as the Supreme Court of Pennsylvania has held repeatedly that "no number of failed [ineffectiveness] claims may collectively warrant relief if they fail to do so individually." Com. v. Johnson, 966 A.2d 532, 532 (Pa. 2009); *see also* Com. v. Washington, 927 A.2d 586, 617 (Pa. 2007) (holding that an argument for relief based on the cumulative effect of trial and appellate errors was not legally sound); Com. v. Travaglia, 661 A.2d 352, 367 (Pa. 1995) (stating that "no quantity of meritless issues can aggregate to form a denial of due process.").

In order to sustain a claim of ineffective assistance of counsel, Appellant must prove that (1) her claim has arguable merit, (2) counsel had no reasonable basis for his action or inaction, and (3) Appellant was prejudiced by counsel's act or omission. Com. v. Pierce, 527 A.2d 973, 975-76 (Pa. 1987) (adopting the Supreme Court of the United States' holding in Strickland v. Washington, 466 U.S. 668, 687 (1984)). If a petitioner fails to meet their burden of production and persuasion for any of these prongs, a claim of ineffectiveness should be denied. Com. v. Pierce, 786 A.2d 203, 213 (Pa. 2001).

Appellant first claims that trial counsel was ineffective during her sentencing for relying on an old pre-sentence investigation that was outdated and did not reflect her attempts at rehabilitation, and that the sentence was unduly harsh and unreasonable. As stated earlier, at the conclusion of Appellant's trial on August 25, 2009, this Court ordered a pre-sentence investigation report for use during sentencing. N.T. 8/25/09 at 23. For reasons unknown, this pre-sentence report was not received by the Court, the Commonwealth, or Appellant, at the time of sentencing. Despite this, Appellant's trial counsel agreed to proceed to sentencing, without the more recent pre-sentence investigation. Instead, trial counsel asked this Court to rely on a pre-sentence report that had been prepared on February 6, 1997 and then to present additional evidence regarding Appellant's alleged efforts to rehabilitate herself since the issuance of that earlier report. N.T. 9/18/09 at 2, 4, 14.

7

Appellant now claims that she was prejudiced by this "antiquated" pre-sentence report because it failed to show her recent employment as an usher, a homecare aid, and in security, which, she argued, "strongly suggested that she could be rehabilitated." Defendant's Amended PCRA Petition, 12/6/13, at 8; however, this argument rings hollow for two reasons. First, Appellant's more recent employment history not contained in the older presentence report was, in fact, discussed in detail by her trial attorney during the sentencing hearing. The relevant discussion is quoted from the record below:

> MR. MISCHAK: ...Because we don't have the updated presentence report, I do want the Court to be aware of a couple of things. Actually, starting back in 2002/2003, she was starting to be gainfully employed. She worked as an usher at a stadium in 2003 to 2004, she worked for Homeguard Security at a Rite Aid for some period of time, and for four years, she worked for a Rose Mary McCullough as a homecare aid.

N.T. 9/18/09 at 4.

Thus, it is clear that this Court was aware of Appellant's more recent employment information, and considered it in fashioning an appropriate sentence.

Even more importantly, however, is the fact that it is obvious that Appellant's trial counsel consented to proceeding without a new updated report since the information contained therein would have been severely detrimental to the Appellant. The 1997 pre-sentence report included Appellant's extensive criminal history consisting of prior of 58 arrests, 27 convictions, and 20 commitments, with a majority of Appellant's convictions involved crimes of theft, forgery, credit card fraud, and criminal conspiracy. Presentence Report 8/25/97. The presentence investigator who prepared this report further stated that Appellant Harris, at the time of the report's creation: "has demonstrated a clear and unequivocal history of anti-social behavior. She obviously has no respect for the rights of property of others and takes what she want." Furthermore, that investigator concluded that Appellant exhibited an "established pattern of antisocial behavior, seems unlikely to change....Psychological counseling seems appropriate, for she appears incapable of functioning normal in society" Id. *That was in 1997.*

The more recent pre-sentence investigation would have painted an even more ominous picture of the Appellant. At sentencing, this Court had the opportunity to review Appellant's most recent updated criminal history extract which would have been reflected in the updated pre-

8

sentence report. That extract indicated that **since 1997**, Appellant's number of arrests for **similar offenses** had skyrocketed to **over 80**, (this does not include Appellant's numerous juvenile arrests). At the time of sentencing Appellant had been convicted of similar offenses 34 times, had 24 commitments, and nine violations of probation and parole. The updated pre-sentence report would have reflected Appellant's record of numerous aliases. The Court learned, and the updated presentence investigation would have revealed, that *while* Appellant was on bail and for this egregious crime – and after trial had actually begun, Appellant was arrested for a similar offense in Massachusetts for which she was a "fugitive from justice".

The only favorable evidence of "rehabilitation" that may have been in the pre-sentence report would have been Appellant's apparent subsequent employment history.[23] Trial counsel offered this information at the sentencing hearing. Furthermore, Appellant failed to exercise her right of allocution at the sentencing, and thus knowingly declined any opportunity to provide other evidence favorable to her. Appellant had a full and fair opportunity to present any mitigating factors that favored her.

In this case, the Appellant's actions of coercing and manipulating a mentally disabled young women to participate in her scheme to steal $5,000.00 from an 87 year old victim, frankly, shocked this Court's conscience. Furthermore, Appellant's astonishing criminal history for the similar offenses was the worst this Court has ever seen. As clearly stated by this Court at the sentencing hearing:

> "Ms. Harris has shown no remorse and no acceptance of responsibility, and has the most extensive criminal history I have seen since I have been a judge. I believe that she does pose a threat to the public, besides the fact that she committed the same act *while this case was bifurcated.* There is no rehabilitative potential, there is a high likelihood that she would reoffend."

N.T. 9/18/09 at 15.

Appellant's dramatic increase in the number of arrests and convictions since the old pre-sentence report is incontrovertible proof that relying on the older report during sentencing did not

---

[23] Trial counsel offered no documents/records to actually support these various employments. Frankly, this Court was astonished that Appellant was able to obtain jobs in "security" and "home-care" for the elderly with such an incredibly lengthy criminal record.

9

at all prejudice Appellant, but benefitted her. Moreover, any mitigating factors which may have been a part of the updated report, such as her various jobs over the years, and the small gap in her criminal arrest history, were discussed by her trial counsel during her sentencing hearing. There was an obvious reason for counsel to refrain from objecting at trial to the use of an old pre-sentence report, or to raise the issue upon direct appeal, and Appellant utterly failed to show that she was prejudiced by counsels' actions. Furthermore, in light of Appellant's extensive criminal history, the nature of the instant crime, and Appellant's continuation of her criminal behavior even while on trial for the instant offenses, this Court presented ample reasons to impose an aggravated sentence. As such, Appellant's PCRA claims regarding the sentencing hearing, and her sentence, are without merit.

Appellant's asserts that counsel was ineffective on appeal for failing to challenge the sufficiency of the evidence on appeal since there was no direct evidence that Appellant herself wrote, deposited, or received proceeds from the stolen and forged check.

It must first be noted that Appellant does not state in her PCRA Petition which specific charge(s) to which this sufficiency of the evidence claim pertains. Defendant's Amended PCRA Petition, 12/6/13, at 8. The courts of this Commonwealth have held that when issues in the 1925(b) Statement are "too vague for the trial court to identify and address, [it] is the functional equivalent of no concise statement at all." Com. v. Smith, 955 A.2d 391, 393 (Pa. Super. Ct. 2008). Any issues that are not raised in a concise statement are waived for appellate review. Id.

However, even if this Court were to guess and correctly identify the charges to which Appellant refers in this claim, it would still fail on the merits. Appellant's claim revolves around whether there is evidence that she wrote or deposited a check; the only offenses for which her attorney would have logically raised such a claim are Forgery and Bad Checks.[24] For the offense of Forgery, evidence that a defendant aided in the commission of other offenses related to the overall criminal scheme is sufficient to find the defendant guilty of Forgery under the theory of

---

[24] The other offenses Appellant was found guilty of: Theft By Deception, Theft, and Secured Execution of Documents by Deception, do not require proof that Appellant wrote the check to be convicted of the offense itself (i.e. not under accomplice liability). 18 Pa. C.S. §§ 3922, 3921, 4114.

10

accomplice liability. 18 Pa. C.S. § 4104; Com. v. Graves, 463 A.2d 467, 489-90 (Pa. Super. Ct. 1983). Therefore, evidence that Appellant stole the check that was forged is sufficient to establish accomplish liability, and to convict her for the offense of Forgery. As for the latter crime, a person commits the offense of Bad Checks, if they *pass* a check along knowing that it will not be honored by the drawee. 18 Pa. C.S. § 4105 (a)(1); Com. v. Conti, 345 A.2d 238, 240 (Pa. Super. Ct. 1975). For this offense, evidence that Appellant wrote the check herself is, again, not required for a conviction. Id.

Furthermore, the law in Pennsylvania is well established that a guilty verdict can be rendered on circumstantial evidence alone. In Pennsylvania, a person is liable for the conduct of another when he or she is the accomplice of that person in the commission of the offense. 18 Pa. C.S. § 306 (b)(3), (c); Com. v. Bradley, 392 A.2d 688 (Pa. 1978). Accomplice liability is imposed when the individual is an active partner in the intent to commit the crime. Com. v. Fields, 333 A.3d 745, 747 (Pa. 1975). Even if there is no direct evidence that Appellant actually forged and cashed Mr. May's check, the evidence presented at trial convinced this Court, beyond any reasonable doubt, that Appellant stole the check from Mr. May on October 12, 2005, while she was left with his checkbook unattended in his dining room, after the ruse of feigning thirst and asking Mr. May to get her a glass of water. *See* N.T. 7/14/08 at 28-30, 38. The very next day, one of Mr. May's checks was deposited in Audra Bell's bank account. Mr. May had absolutely no knowledge or connection with Audra Bell, however, the evidence clearly revealed that Appellant was very familiar with Audra Bell and understood that Audra was a young women with intellectual and emotional disabilities. This Court had no doubt whatsoever that Appellant preyed on the weakness and vulnerability of Audra in convincing her participate in the scheme to steal from her elderly neighbor.

As there was sufficient evidence to find that Appellant liable under the theory accomplice liability, and on the basis of overwhelming circumstantial evidence, Appellant's attorney had a reasonable basis for not challenging the sufficiency of the evidence. Consequently, this Court properly dismissed Appellant's this claim of ineffective assistance of counsel as being without merit.

11

Appellant's third claim is that she was denied her right to counsel in violation of the United States Constitution when her trial counsel did not present proof that witness James Miles could not have seen her with Audra Bell in the summer of 2002, since Appellant was incarcerated during that time period. Mr. Miles' testimony was extremely important to the Commonwealth as it established the relationship and link between Appellant and Audra Bell. According to Appellant, this putative failure constituted "abandonment" of counsel during trial. As described earlier, in order to succeed on this claim, Appellant must prove that she was prejudiced by counsel's failure to present proof that she was incarcerated in the summer of 2002, and that there was no reasonable basis for counsel to elect not to present such proof at trial. Pierce, 527 A.2d at 975.

In her petition, Appellant purports to show that she was incarcerated in the summer of 2002, by attaching a report from the Commonwealth of Pennsylvania Board of Probation and Parole as an exhibit. Defendant's Amended PCRA Petition, 12/6/13, at 6. This report supposedly indicates that Appellant was incarcerated in Delaware County, Pennsylvania from May 2002 until at least August 23, 2002 (the date the report was issued). Id. However, in reality, this report *does not* show that Appellant was incarcerated during that time and, when read in conjunction with a relevant criminal docket summary from the Court of Common Pleas, Delaware County, seems to indicate the exact opposite. Id., Ex. A; Court of Common Pleas, Delaware County Criminal Docket Summary, CP-23-CR-0000682-2002.[25] According to this docket summary, Appellant Rochelle Harris pled guilty to charge of Theft By Unlawful Taking[26] on May 14, 2002 in Delaware County, Pennsylvania and received a maximum sentence of 23 months. Court of Common Pleas of Delaware County Criminal Docket Summary, CP-23-CR-0000682-2002. The most relevant part of the document attached to Appellant's PCRA Petition as Exhibit A expands upon the information on this charge contained in the docket, and is quoted verbatim below:

Conviction(s) resulting in recommitment:

---

[25] This Docket Summary was not part of the original record; however, it is a public document and can be freely accessed through the Unified Judicial System of Pennsylvania's Web Portal, Public Web Docket Sheets page at https://ujsportal.pacourts.us/DocketSheets.aspx.

[26] 18 Pa. C.S. § 3921.

12

05/14/02--DELAWARE CO--682-02--TIME SERVED TO 23 MONTHS--DELAWARE CO PRISON--*PAROLED 05/14/02*

Defendant's Amended PCRA Petition, 12/6/13 at Ex. A.

This prison record does not prove Appellant was incarcerated in the summer of 2002, in fact, it shows the opposite. The records indicate that Appellant was sentenced to a minimum of time served for the offense, and was paroled on May 14, 2002, and thus not incarcerated in the summer of 2002. The only proof that Appellant advances in her PCRA Petition that she was in custody in the summer of 2002 is this Exhibit. Appellant failed to show that she was prejudiced by her trial counsel electing not to introduce this report "proving" that she was incarcerated during the summer of 2002. For these reasons, this Court found Appellant's third PCRA claim to be without merit.

## III.    CONCLUSION

In summary, this court has carefully reviewed the entire record and finds that all claims made in Appellant Rochelle Harris' Petition are without merit. This Court respectfully requests that the instant appeal be denied.

BY THE COURT:

J.

13